JOSEPH FERNETTI, ADMINISTRATOR, PLAINTIFF-RESPONDENT, v. WEST JERSEY AND SEASHORE RAILROAD COMPANY, DEFENDANT-APPELLANT.

Argued November 18, 1914—Decided March 1, 1915.

1. The title of the act of the legislature entitled "An act with reference to the degree of care necessary to be used by travelers over railroad crossings protected by flagman or safety appliances or both" (*Pamph. L.* 1909, *p.* 37) sufficiently expresses the object of the act within the constitutional provision.

2. The modification of the legal rule of caution, barring recovery where neglect, on the part of a traveler approaching a railroad crossing, to look and listen as effectively as the location and circumstances permit, proximately contributes to the injury, is a merely incidental matter and is not in itself a necessary part of the title of the act and need not be expressed in it.

3. Under the statute above referred to (*Pamph. L.* 1909, *p.* 37), the plaintiff's intestate was absolved from stopping, looking and listening before passing over the railroad crossing, even though the electric bell, placed to warn travelers of the approach of a train, was out of order.

4. Where there is conflicting testimony by witnesses whether or not the statutory signals of an approaching locomotive engine, by either blowing a whistle or ringing a bell, were given, the question is clearly for the jury to decide.

On appeal from the Supreme Court.

For the plaintiff-respondent, *Morris F. Levin* and *Isadore V. Klenert.*

For the defendant-appellant, *Bourgeois & Coulomb.*

The opinion of the court was delivered by

KALISCH, J. This is an appeal from a judgment entered upon a verdict recovered in the Atlantic Circuit, by the plaintiff-respondent against the defendant-appellant.

The plaintiff's intestate, Eva Fernetti, while attempting to cross the tracks of the defendant company at Minotola was struck and killed by one of its locomotive engines.

There were no gates nor a flagman at the crossing. The defendant company had installed an electric bell at the crossing to give warning of the approach of its trains.

The plaintiff's intestate was riding a bicycle and dismounted at the crossing to permit a southbound train to pass. Immediately after the last car cleared the crossing, Eva, mounted her bicycle and proceeded across the tracks, only to be struck and killed as above stated, by a locomotive engine which came along on the northbound track and which was concealed from Eva's view momentarily by the passing electric train. There was some conflict in the testimony whether she ran into the side of the engine or was passing in front of it, . when struck.

There was testimony tending to establish that there was neither a whistle blown nor a bell rung by the approaching locomotive engine but that the electric bell at the crossing started to ring when the electric train approached and before the train had entirely passed the bell ceased to ring, and then it was that Eva started to cross over on her bicycle. But for the passing of the electric train Eva would have had a clear view of about one thousand feet in the direction of the approaching locomotive engine. It was a conceded fact that there was no notice posted at the crossing that the electric bell was out of order.

The main legal questions presented for review upon this appeal arise out of the refusal of the trial judge to grant

the motions made, by counsel of appellant, for a nonsuit after the plaintiff had rested his case, and for the direction of a verdict for the defendant, after the testimony on both sides was all in.

It is argued by counsel of appellant that the plaintiff's decedent was guilty of negligence contributing to her injury and death, in attempting to cross the tracks immediately behind the electric train, as a matter of law, because she did not look or listen effectively, as it was her duty to do, and that if she had waited until the electric train had passed far enough away from the crossing for her to make looking effective, she would have had an unobstructed view of one thousand feet in the direction that the engine came that struck her.

It is conceded by counsel of appellant that the act of 1909 (*Pamph. L.* 1909, *p.* 137) was applicable to the crossing where the plaintiff's decedent was killed. This being so the provision of that act which declares, "no plaintiff shall be barred of the action because of his failure of the person injured or killed to stop, look and listen before passing over said crossing," is a complete refutation of the appellant's contention.

There was testimony to the effect that there was an electric bell at the crossing. It had ceased ringing when the electric train passed over. It was not ringing when the locomotive engine approached. There was no notice posted at the crossing that the electric bell was out of order. Such a condition of things under the statute referred to absolved the plaintiff's intestate from stopping, looking and listening. *Brown* v. *Erie Railroad Co.,* 91 *Atl. Rep.* 1023.

But it is further insisted, by counsel of appellant, that the act referred to is unconstitutional, in that it purports to be "An act with reference to the degree of care necessary to be used by travelers over railroad crossings protected by flagman or safety appliances or both," without indicating in the title whether the purpose of the act is to extend or limit the degree of care to be used, or in what particular such care is to be either extended or limited; and that there is no sug-

gestion in the act that it is intended to abolish the rule of contributory negligence.

This objection is manifestly more fanciful than real. The object or purpose of the act is to legislate with reference to the degree of care to be used by one approaching and crossing railroad tracks.

As a plaintiff's negligence proximately contributing to his injury, involves the exercise of care on his part, commensurate with the danger confronting or to be encountered by him, the title of an act which plainly expresses, as it does in this case, that it is a statute with reference to the degree of care necessary to be used by travelers over railroad crossings under certain circumstances, &c., is good without pointing out whether the degree of care shall be greater or less than theretofore existing, as matter of law.

The duty of a traveler approaching a railroad crossing to look or listen, before attempting to cross the tracks, and to look or listen or do both, as effectively as the location and circumstances would permit was a legal rule of caution adopted by our courts, the breach of which rule, if proximately contributing to a plaintiff's injury would, as a matter of law, debar his right of recovery.

The modification or abolition of this legal rule of caution is merely an incidental matter, germane to the purpose expressed in the title of the act and is not in itself a necessary part of the title and need not be expressed in it. *Board of Health* v. *Phillipsburg,* 83 *N. J. Eq.* 402.

Another ground urged by counsel of appellant, in support of the motions to nonsuit and to direct a verdict for defendant made by him in the court below, is that the testimony for the plaintiff below relating to the absence of statutory signals of the approaching locomotive engine, by either blowing a whistle or ringing a bell, was purely of a negative character, as against the affirmative testimony adduced by the defendant company that the statutory signals were given.

In *McLean* v. *Erie Railroad Co.,* 69 *N. J. L.* 57, affirmed by this court in 70 *Id.* 337 (on *p.* 60), it was held: "It is for the jury to say whether the testimony of a witness having

an equal opportunity to hear and whose hearing is equally good, and who testifies that he did not hear the blowing of a whistle or ringing of a bell, notwithstanding that he listened, shall or shall not be given equal credit with the testimony of a witness similarly situated, who testified that he did hear."

A witness, who stood at the crossing near where the plaintiff's decedent was waiting for the electric train to pass, testified in the most positive manner that neither a bell was rung nor a whistle blown by the locomotive engine until just immediately before the plaintiff's decedent was hit.

The observations made make it clear that the trial judge did not err in refusing to nonsuit or to direct a verdict for the defendant.

The only other matter left for our consideration is whether or not the trial judge erred in refusing to charge first, second and fourth requests.

The first request practically asked the court to charge that the plaintiff's decedent was guilty of negligence contributing to her injury for her failure to look and to see the locomotive engine approaching, irrespective of the fact whether or not the crossing bell was ringing or whether or not a notice was posted at the crossing that the electric crossing bell was out of order. This request, therefore, was properly refused.

The second request was as follows: "If the plaintiff's decedent ran into side of engine she is guilty of contributory negligence." This request has the same defects as have already been pointed out exist in the first. And it may be further added that the trial court is not obliged, though specially so requested to do, to apply a legal principle, which it clearly states to the jury, to conditions of fact postulated by the defendant's counsel, particularly where such conditions do not include all the circumstances which should influence the conclusion of the jury.    Cons. Traction Co. v. Chenowith, 61 N. J. L. 554.

The fourth request was also properly refused because whether the train which hit the plaintiff's decedent was an extra or regular one was wholly immaterial.

Judgment will be affirmed.

*87 N. J. L.* Jacowicz v. D., L. & W. R. R. Co.

*For affirmance*—THE CHANCELLOR, CHIEF JUSTICE, GARRISON, SWAYZE, TRENCHARD, PARKER, BERGEN, MINTURN, KALISCH, BLACK, BOGERT, VREDENBURGH, WHITE, TERHUNE, WILLIAMS, JJ. 15

*For reversal*—None.