FRANK M. BAER, RESPONDENT, v. THE LEHIGH AND HUDSON RIVER RAILWAY COMPANY, APPELLANT.

*Argued June 5, 1918—Decided March 15, 1919.*

1. Where from the plaintiff's case it appeared that while driving an automobile on a public highway, he stopped his car about twenty feet away from defendant's tracks, and then saw an engine standing about twenty feet from the crossing; that no bell of any kind or whistle was sounded, and he then proceeded to cross; and, before he succeeded in crossing, the engine which had been standing started to move and struck his machine, injuring it and the plaintiff himself—*Held,* that a contradiction of such testimony presented an issue of fact for the jury, both on the question of defendant's negligence and the contributory negligence of plaintiff.

2. The trial court charged "that if the plaintiff saw the train approaching and attempted to cross in front of it, he was guilty of contributory negligence and cannot recover," which instruction substantially and adequately presented the law applicable to the case; specific requests on the same general subject, which were refused, will not be a ground for reversal on appeal, especially when no specific exceptions were taken to such refusals.

3. The trial court charged substantially that while plaintiff was required to use reasonable care to cure himself, he was not bound to incur great bodily injury or death from an operation if he had reasonable apprehension of such an untoward result. *Held,* not erroneous.

On appeal from Warren County Common Pleas.

Before Justices PARKER and MINTURN.

For the appellant, *George M. Shipman* and *Gilbert Collins.*

For the respondent, *Egbert Rosecrans.*

The opinion of the court was delivered by

MINTURN, J.　The judgment appealed from was entered on the verdict of a jury in favor of plaintiff, upon a cause of action in which the proof was that plaintiff, a garage keeper at Belvidere, while about to cross defendant's tracks in that town, in his automobile, upon a stormy night, with passengers who had hired him to take them to visit a sick relative, was struck by defendant's engine, the collision resulting in overturning the automobile and pinning its occupants beneath it.

The situation presented by the plaintiff at the time was that as he approached the crossing he stopped his car about twenty feet away from the track, where he saw the engine with a head light standing about twenty feet from the public crossing; there was no bell of any kind or whistle sounded, although there was at the point a crossing bell apparently inactive, and there was no statutory sign "Out of order" posted to indicate the presence of a bell. Plaintiff having assured himself of the stationary posture of the engine and of the apparent absence of *indicia* of danger, proceeded to cross the tracks. When the front wheels of the auto almost reached the track upon which the engine had been standing, the latter, without any signal of its intention, began to move in plaintiff's direction, and before he could avoid it, struck his machine and caused the damage complained of, consisting of serious damage to the automobile and serious bodily injuries to the plaintiff himself.

The questions involved are the alleged negligence of the defendant, and the alleged contributory negligence of plaint-

iff, superadded to which are alleged procedural errors in the charge of the court.

It is quite apparent that when plaintiff stopped twenty feet from the crossing to view the situation, he exercised that degree of reasonable care imposed upon him by law. Having satisfied himself that no danger was apparent from the general appearance of the situation, hearing no bell at the crossing and no indication by bell or otherwise of the intention of the engine, twenty feet away from the crossing, to change its *situs;* and receiving no warning by crossing bell or otherwise that danger was imminent, the inquiry resolved itself into a question of fact for the jury, whether under all the circumstances he exercised the care and caution in then crossing which the law standardizes as that commensurate with the care exercised by the ordinary prudent man.

At common law as evidenced by our adjudications, and devoid entirely of the superadded legislative protective requirement of the Crossing act (*Pamph. L.* 1909, *p.* 137), the question of negligence and contributory negligence thus presented were for the jury. *Carmany* v. *West Jersey and Seashore Railroad Co.,* 78 *N. J. L.* 552; *Quinn* v. *West Jersey and Seashore Railroad Co.,* Id. 539; *Napodensky* v. *West Jersey and Seashore Railroad Co.,* 85 *Id.* 336; *Fernelli* v. *West Jersey and Seashore Railroad Co.,* 87 *Id.* 268.

"Negligence," as was said in the Napodensky case, "in such circumstances becomes a relative term incapable of exact determination, except upon consideration, not only of the facts, but of all the circumstances, and in view of the entire environment in which the actor is placed."

The Crossing act of 1909 operated as an additional make weight in the balance, for under its provisions the Court of Errors and Appeals has held that the plaintiff was absolved from stopping, looking and listening before passing over the railroad crossing, "even though the electric bell placed to warn travelers of the approach of a train was out of order." *Fernelti* v. *West Jersey and Seashore Railroad Co., supra.*

In any aspect of the situation, therefore, the case was properly sent to the jury.

But the contention is that plaintiff's contributory negligence was particularly emphasized after he had seen the engine moving and assumed the risk of crossing with this danger clearly in view. This contention involved the jury's acceptance of the facts as related by defendant's witnesses.

Whether the engine was moving before the plaintiff attempted to cross; whether the whistle was blowing and the bells ringing, and whether plaintiff saw, or by reasonable observation could have seen, the true situation, with the snow beating against the wind-shield of his machine, or whether a proper degree of prudence would have warned him as a reasonable man of the danger inherent in the attempt to cross, and would have impelled him to wait at the crossing for a longer period to observe the action of the engine, were questions under the cases cited, which cannot be determined by an *ex-cathedra* judicial pronouncement, but were so entirely relative in their nature and governed by time, appearances, absence of signals, weather circumstances and general environment, as to make the verdict of a jury the only juridical and logical medium for their correct legal solution.

As was said in the *Napodensky Case, supra,* which in its general and salient features is not unlike the case *sub judice,* "the true and practical solution of such a situation, and the legal characterization of the acts of a man so jeopardized, must necessarily present a jury question, under proper instructions from the court."

The situation in the case of *Horandt* v. *Central Railroad Co.,* 78 *N. J. L.* 190, was the reverse of that presented by the case at bar. There the plaintiff's case rested upon the theory that they were unaware of the crossing, and that no adequate notice of its existence was given. The case *sub judice* presents a situation both of *scienter* and alleged care commensurate with the known and obvious danger inherent in the environment, a combination of circumstances manifestly presenting a jury question. *McCool* v. *West Jersey and Seashore Railroad Co.,* 81 *Id.* 479.

The trial court charged defendant's request that if "the plaintiff saw the train approaching and attempted to cross in

front of it, he was guilty of contributory negligence and cannot recover."

This direction fairly and adequately presented the gravamen of defendant's case as elucidated by the testimony. Whether the crossing bell was ringing was in dispute, and the trial court properly left that issue to the jury to determine, with the admonition that if they found that it was ringing that the plaintiff was guilty of contributory negligence in attempting to cross; but if they found otherwise, the plaintiff had a legal right to assume that no train was approaching, and that he was absolved from the common law obligation of looking and listening.

This interpretation of the act of 1909 is the doctrine laid down in the *Fernetti Case, supra,* to which we have referred.

In any event, if the plaintiff and his witnesses are to be credited, he performed his common law duty of looking and listening before he attempted to cross, and the real danger loomed up while he was in the act of crossing, and presented the gravamen of the case.

The jury were practically instructed that if, as defendant contended, all the instrumentalities, incident to a railroad warning of danger were set in motion before the plaintiff undertook to cross, the plaintiff could not recover for an injury thus resulting from what was in fact his own culpability.

We think the charge of the trial court was a substantial and adequate presentation of the generic rules of law applicable to the situation, and that the specific requests by defendant to charge where they were not practically covered by the charge were properly refused, particularly where no specific exception was interposed to cover them. This applies also to the question of damages where the court was requested to charge generally that the plaintiff's duty was "to avail himself of proper medical advice and to follow such advice," which request the court qualified to the extent of declaring that while the plaintiff was obliged to use reasonable care to cure himself, he was not bound to incur great bodily injury or death from an operation, if he had a reasonable apprehension of such an untoward result. No exception was taken to

this direction, unless a general exception to the charge upon the question of damages can be held to comprehend it.

We apprehend, however, the trial court substantially stated the rule evolved by the cases. The question has been mooted under the statutory obligations imposed upon an employer by the Workmen's Compensation acts; and, so far as discussion of the doctrine has developed in this jurisdiction, the trial court's view is amply sustained by the case of *McNally* v. *Hudson and Manhattan Railroad Co.*, 87 N. J. L. 455. We are unable to perceive, however, that the question is specifically raised in the case, since no adequate exception presents it. *Miller* v. *Delaware River Transportation Co.*, 85 *Id.* 700.

As was said by Mr. Justice Pitney in *Guerin Stone Co.* v. *Callin Construction Co. (October term,* 1918), 248 *U. S.* 334, referring to the inadequacy of general exceptions, such an exception "is altogether too general to be regarded as directing the mind of the trial court to any single and precise point of alleged error so as to call for a reconsideration of the ruling, and hence could not furnish a basis for reversing the judgment. That an exception must be specific need not be emphasized."

Finding no error the judgment will be affirmed.