14 N.J. Super. 425 (1951)
82 A.2d 635
ALTA SHIRLEY GIBSON, CORNELIUS ALBERT GIBSON AND CORNELIUS GIBSON, PLAINTIFFS-RESPONDENTS,
v.
THE PENNSYLVANIA RAILROAD COMPANY, A BODY CORPORATE (IMPLEADED, ETC.), DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued June 18, 1951.
Decided June 29, 1951.
*428 Before Judges McGEEHAN, JAYNE and WM. J. BRENNAN, JR.
Mr. John A. Hartpence argued the cause for appellant.
Mr. Theodore D. Parsons argued the cause for respondents (Messrs. Parsons, Labrecque, Canzona & Combs, attorneys).
*429 The opinion of the court was delivered by WILLIAM J. BRENNAN, JR., J.A.D.
At about 8 o'clock in the morning of April 7, 1945, a clear day, an automobile driven by plaintiff, Alta Shirley Gibson, and owned by her father-in-law, the plaintiff, Cornelius Gibson, collided with a train of defendant at a grade crossing in Howell Township, Monmouth County. Mrs. Gibson and her husband recovered a judgment in the Superior Court, Law Division, Monmouth County, for the personal injuries suffered by her in the mishap, and Cornelius Gibson recovered a judgment for his property damage. Defendant railroad appeals.
Mrs. Gibson approached the crossing along a narrow dirt road. The Smith farm, bordering the road to her right, ran up to within a few feet of the railroad track and back from the road some distance along the right-of-way. According to the engineer, the train, en route to Freehold from Farmingdale, proceeded to the crossing past the Smith farm at about 55 miles per hour. No member of the train crew saw the automobile coming to the crossing nor had any knowledge of the collision until there was a sudden escape of steam from beneath the engine, which, after the train stopped beyond the crossing, was found to have been caused by the dislodging of a steam pipe underneath a cylinder at the back of the locomotive where the automobile struck. Mrs. Gibson was thrown from the automobile by the impact, after which the car came to rest in the center of the road a few feet from the track.
From the Smith residence, which faced the road and was situated some 750 feet from the crossing, the dirt road to the crossing was a sequence of dips and rises. The last rise began just short of the track. The railroad maintained a crossing bell at the crossing to warn travelers of the approach of a train.
Mrs. Gibson said that when she reached the crown of a rise about 50 feet short of the track she looked to her right and did not see the train. She testified that she "listened" for but did not hear the crossing bell ringing, nor did she *430 hear the sound of a train whistle or engine bell. After making the observation to the right, she testified she made an observation to the left, that she was proceeding in second gear at less than ten miles an hour, that she took another "quick" look to the right and the train, coming from that direction, "was right on top of me."
The controverted fact questions were whether the crossing bell was ringing and the locomotive bell or whistle sounding as the train approached the crossing. The train crew testified that both the locomotive whistle and bell were operating and had been for the statutory distance before the train reached the crossing. See R.S. 48:12-57. No testimony was offered, however, that the crossing bell was ringing at the time. A railroad maintenance man testified that the bell operated when he made tests after the collision, but said that, while the bell was designed to start ringing automatically when a train entered a point 2,500 feet from the crossing and to continue ringing until the train had passed over the crossing, his tests were made not at that distance but only at a place about ten feet from the crossing. Four witnesses for plaintiffs, Mr. Smith and three of his farm laborers, all of whom were nearby either in the field or in the road, testified that they did not hear either the crossing bell ringing or the sound of the locomotive whistle or engine bell. Their attention was directed to the mishap either by the crash or by the squealing of the brakes when the train was brought to a stop.
The trial judge submitted the disputed issues to the jury for determination under a charge which included instructions upon the consideration to be given R.S. 48:12-84, the so-called "Crossing Act," L. 1909, p. 137, which "in substance, provides that any person approaching the right of way of a railroad which crosses a public highway and at which a crossing bell has been installed by the railroad company designed to protect the traveling public from danger in passing over the crossing, is entitled to assume such warning appliance is in good and proper order and will be duly and properly operated, *431 unless a written notice `Out of Order' be posted in a conspicuous place at such crossing, whereby such traveler will be warned of any danger in passing over said crossing, and that the failure to post such notice shall not bar any action for injuries to person or property, or for death caused at such crossing because of the failure of the person injured or killed to stop, look and listen before passing over the crossing." Snuffin v. McAdoo, 93 N.J.L. 231 (E. & A. 1919).
Appellant argues that in the circumstances of this case it was error to charge, as the court did at plaintiffs' request, the text of that statute and several requests based thereon to the effect that Mrs. Gibson was entitled "to assume that it was safe for her to cross the tracks" if the crossing bell was not ringing because in that circumstance, "in the absence of any notice that the bell was `Out of Order,' she was absolved from the duty of stopping, looking and listening." We are satisfied that in the text of the entire charge the requests were unobjectionable under the interpretation of the statute laid down by Baer v. Lehigh and Hudson River Ry. Co., 93 N.J.L. 85 (Sup. Ct. 1919), affirmed 93 N.J.L. 446 (E. & A. 1919); Girardin v. N.Y. & Long Branch R.R. Co., 135 N.J.L. 135 (E. & A. 1917); Fernetti v. West Jersey and Seashore R.R. Co., 87 N.J.L. 268 (E. & A. 1915); Hatch v. Erie R.R. Co., 88 N.J.L. 545 (Sup. Ct. 1916); and Snuffin v. McAdoo, supra. The contention that the charge attributed to the Crossing Act an effect which would "practically make the Railroad Company an insurer of the safety of one crossing its tracks and relieve him of all duty to exercise reasonable care for his own safety" is not supported by a study of the charge, which must, of course, be read in its entirety with due regard to the issues and proofs. Before reading the plaintiffs' requests to the jury the trial judge had charged appellant's requests numbers 1 and 4 which emphasized that there could be no recovery if Mrs. Gibson was guilty of contributory negligence. No. 1 was, "Under the law of this state the jury may not weigh comparative degrees of negligence. If, under the evidence you find *432 the plaintiff Mrs. Gibson was negligent in the slightest degree and that negligence contributed proximately to the accident complained of, the plaintiffs are barred of any recovery."; and No. 4 was, "If the plaintiff, Alta Shirley Gibson, failed to exercise reasonable care for her safety as she approached and drove upon and across the railroad tracks and her negligence contributed proximately to her injuries, no matter how slight that negligence may have been, she cannot recover against defendants." Again, at the same place, the court charged, "On that point I think I should explain to you that that is the law that affects the plaintiffs and in this cause the plaintiff, Mrs. Alta Shirley Gibson, if she were guilty of contributory negligence, she cannot recover, nor can any of the other plaintiffs recover, as I say, if the contributory negligence is proven on the part of the plaintiff, in this case, Mrs. Gibson, which directly contributes to the injury." In addition, at the close of the charge when appellant's counsel objected that the jury had not been sufficiently instructed that plaintiffs were not entitled to recover if Mrs. Gibson was guilty of contributory negligence, the trial judge invited counsel to "write out a request to charge covering it and I will be glad to charge it." Counsel declined, stating that he would rely on his objections. The court then said, "Therefore I will charge the jury what I think is just, as you refuse to give a request." The court then commented upon the respective burdens of proof of the parties and interrogated appellant's counsel whether counsel believed "that is all that is necessary"; the record discloses no direct response by counsel. In this situation, it is abundantly clear that appellant cannot complain of the trial court's failure further to amplify the charge. Spinning v. Hudson & Manhattan R. Co., 11 N.J. Super. 333 (App. Div. 1951).
It is next argued that there was error in the trial court's refusal to charge defendant's request that "it was the duty of the plaintiff, Alta Shirley Gibson, to look and listen effectively and, if necessary, to bring her vehicle to a stop before crossing the tracks in order to look and listen." Not *433 so. Mrs. Gibson was absolved from the duty of stopping, looking and listening before passing over the railroad crossing if the crossing bell was not ringing.
It is next argued that it was error to refuse to charge defendant's request that "negative testimony cannot outweigh positive, affirmative testimony" and "There is not positive, affirmative evidence in this case on the part of the plaintiffs to sustain the negligence alleged, sufficient to outweigh the positive, affirmative evidence produced on the part of the defendant showing freedom from such negligence." There was no error. There was no affirmative testimony that the crossing bell was ringing as the train approached the crossing or at the time Mrs. Gibson reached it; she said she "listened" for it and did not hear it. As to the locomotive whistle and bell, it is clear that a fact question for jury determination was presented in light of the testimony of Mrs. Gibson and of her four witnesses not only that none of them heard the crossing bell ringing but also that none of them heard the locomotive whistle or bell. All of them were in positions where they could have heard them if in fact either had been sounding. Mazanek v. Penna.-Reading Seashore Lines, 125 N.J.L. 394 (E. & A. 1940); Ackerly v. Pennsylvania R.R. Co., 130 N.J.L. 292 (E. & A. 1943).
It is next argued that it was error to deny appellant's request to charge that "the engineer had a right to assume that an automobile approaching the tracks would stop on the highway without going out, upon and over the crossing." But the engineer testified that he never saw the car approaching the crossing. The request was, therefore, not applicable to the facts of the case. The refusal of a request that is unsupported by the evidence is not error. Delaney v. Erie Railroad Co., 97 N.J.L. 434 (Sup. Ct. 1922), affirmed 98 N.J.L. 558 (E. & A. 1923). In any event the refusal to charge the request did not prejudice any substantial rights of the appellant.
It is next argued that there was error in permitting plaintiffs' witnesses to testify regarding the speed of the *434 train. We find no such testimony at the places in the record to which the brief refers us. The only testimony on the subject which we discover is that of the defendant's own engineer who volunteered that the train was going 55 miles an hour.
It is next argued that the trial court erroneously sustained objections to questions put to one of plaintiffs' witnesses on cross-examination, designed to elicit whether that witness had heard Mrs. Gibson make any statement to the doctor to whom she was taken immediately after the mishap as to the manner of the occurrence of the accident. The objections were sustained on the ground that the questions were outside the scope of the direct examination. See Baus et al., v. Trenton, etc., Traction Co., 100 N.J.L. 364 (E. & A. 1924). The record shows that the subject of any statement by Mrs. Gibson to the doctor was not opened on direct examination. And appellant's counsel declined the court's suggestion that counsel make the witness his own if he cared to. In any event, we do not know what counsel hoped to prove through the witness and so cannot determine whether the ruling was prejudicial, even if we assume it was erroneous. A new trial is not to be granted for "improper * * * exclusion of evidence * * * unless, after examination of the whole case, it appears that the error injuriously affected the substantial rights of a party." Rules 1:2-20(b) and 4:2-6. See also Rule 3:61. Appellant's counsel failed to avail himself of the provisions of Rule 3:43-2 to make a specific offer of what he expected to prove by the answers of the witness. Appellant carries the burden of showing that prejudice resulted (Palmer v. Hoffman, 318 U.S. 109, 87 L.Ed. 645 (1943)) and has failed to meet the burden in leaving us without the essential data upon which to determine the point.
Next, error is asserted in the exclusion of the testimony of a witness for defendant as to his observations of the distance he was able to see along the track to his right while riding in an automobile along the road. There was no testimony to evidence any similarity in this respect between the *435 opportunities for observation available to this witness and those available to Mrs. Gibson.
Next, it is urged that it was error to admit the testimony of one of plaintiffs' witnesses as to conditions impeding visibility along the track to the left of the crossing. We can discern no prejudice to the substantial rights of appellant in the admission of that testimony.
Next, it is argued that plaintiffs failed to sustain the burden of proof and that, because the automobile ran into the side of the locomotive, the proximate cause of the collision was not any negligence of appellant but was Mrs. Gibson's act in colliding with the engine when it was in possession of the crossing. We pass over the fact that appellant made no objection at the trial to the submission of the case to the jury and made no motion for judgment on such grounds. It is clear from what has been said that the questions whether the statutory warning signals had been given and whether the crossing bell was ringing were sharply controverted. In the circumstances the trial court properly left to the jury for determination the issues of negligence, proximate cause and contributory negligence.
The point that the verdicts were contrary to the weight of the evidence, raised at the oral argument, will not be considered because not embraced within or necessarily suggested by the statement of questions involved upon the appeal enumerated in appellant's brief. Rules 1:3-2(c) and 4:3-1.
Affirmed.