IRVING D. BELLES, PLAINTIFF IN ERROR, v. WILLIAM H. KELLNER ET AL., DEFENDANTS IN ERROR.

Argued November 26, 1901—Decided March 3, 1902.

From the fact that a quiet, gentle horse was left standing untied in the public street, free from the presence of anything which might frighten or disturb him, the driver being within from five to eight feet of the wagon to which the horse was hitched, it appearing that the driver had been accustomed to use the horse in that way for many years without an accident, no inference can arise that the act is negligent.

On error to the Supreme Court. For opinion of that court see 37 *Vroom* 561.

For the plaintiff in error, *Samuel Kalisch.*

For the defendants in error, *Lindabury, Depue & Faulks.*

The opinion of the court was delivered by

VAN SYCKEL, J. This case was tried in the Essex Circuit Court, where a judgment was rendered for the plaintiff.

The Supreme Court reversed that judgment, and the judgment of the Supreme Court is in this court for review.

The facts of the case are very concisely stated in the opinion of Mr. Justice Fort in the Supreme Court, as follows:

"This was an action for damages tried at the Essex Circuit, brought by the plaintiff to recover for an injury alleged to have been occasioned by a horse of the defendants left standing in the public street of the city of Newark without being in charge of any person and without being tied or otherwise secured.

"The plaintiff is a letter carrier, and was in the habit of passing upon his wheel three or four times daily the place where the accident happened.

"The defendants are retail merchants in the city of Newark, and their delivery wagons are accustomed to be backed

up to the curb line adjoining their property on Halsey street; the wagons are cut-under wagons, and the horses are turned so as to stand parallel with the sidewalk, and left untied while the wagons are being loaded. With these facts the plaintiff was familiar.

"It is claimed by the plaintiff that upon the day of his injury three of these delivery wagons were thus standing with the horses hitched thereto, facing to the north, parallel with the east side of Halsey street.

"The plaintiff states that he was riding at a speed of about six miles an hour; that he had passed two of the wagons of the defendants, and was about to pass the third, when the horse attached to it, to quote his language, 'suddenly without any warning at all, swerved around, knocking me on the right side, and lifted me from my wheel, and threw me so I landed on the asphalt pavement on my left shoulder and head with my heels in the air.' "

The suit in the Circuit Court was brought to recover damages for this alleged injury.

It appeared by the evidence on the part of the defendants, which was uncontradicted, that the horse was quiet and gentle and accustomed to being left untied while the driver was a short distance from him engaged in his work; that the defendants had purchased this horse fourteen or fifteen years before, and had constantly used him in their business. During all that time it was the habit of the drivers not to tie or secure the horse in any way while leaving him to load the wagon or to deliver parcels, and during all that time he had never been known to run away or to move from the place where he was left standing.

The testimony on the part of the defendant, also, was that the driver of the horse was upon the sidewalk, about midway between the wagon and the elevator in defendant's store. That elevator was ten or fifteen feet from the wagon, and therefore the driver was distant from five to seven and a half feet from the wagon.

The place where the horse was standing was free from the presence of a locomotive or music passing at the time, or any

unusual thing which could be supposed to frighten a gentle horse accustomed to be left in that condition in the street. All the horse did was to move around towards the centre of the street without moving the wagon from its position against the curbstone.

To entitle the plaintiff to recover he was required to show by a preponderance of evidence that the defendants were guilty of some negligent act which was the proximate cause of the injury to the plaintiff. In reviewing this case upon the alleged error in the trial court we must assume that the testimony on the part of the defence is true, and therefore the only question is whether the mere fact of leaving the horse untied under the conditions stated constituted actionable negligence.

The defendants' counsel requested the court to charge:

"It is not negligence for the driver of a quiet, gentle horse to leave him untied and otherwise unattended on the side of a public highway, while the driver is upon the sidewalk loading goods in the wagon."

The trial court refused so to charge, and to such refusal exception was taken, and error is assigned thereon.

In dealing with this request to charge, it was the duty of the trial court to consider and apply it, and to instruct the jury upon it as applicable to the facts and circumstances of the case before them, assuming that the horse was kind and gentle, accustomed to such use as before stated, and that the driver was near him upon the sidewalk, nothing of an unusual character being present to alarm a quiet, gentle horse.

The question is whether, under these circumstances, there is anything from which an inference can be drawn that a man of ordinary prudence could have reasonably believed that injury might result from his act.

With what additional care he might have been charged if the horse had been left near a steam railroad track where locomotives were passing, or in a place where fire engines or bands of music were approaching, is not a question in this case.

It has been frequently held that leaving a horse untied and unattended in the street—that is, with no one near enough to

control him by voice or otherwise, or to leave him in that condition in proximity to a steam railroad or where the horse is not gentle, are circumstances from which negligence may be inferred. *Lynch* v. *Nurden,* 1 *Ad. & E.* (*N. S.*) 429; *Rumsey* v. *Nelson,* 58 *Vt.* 590; *Drake* v. *Mount,* 4 *Vroom* 441; *Hoboken Land and Improvement Co.* v. *Lally,* 19 *Id.* 604.

The facts regarded as controlling in those cases are absent in the case before us.

Here, in my judgment, there was nothing to lead a reasonably prudent man to believe that any greater care was necessary. The fact that the horse was left so that he could move a short distance before the driver could stop him did not constitute negligence; it would be difficult to tie a horse so that he would have no freedom of movement whatever.

As the Court of Appeals said in *Wasmer* v. *Delaware, Lackawanna and Western Railroad Co.,* 80 *N. Y.* 212, there is no absolute rule of law that requires one who has a horse in a street to tie him, or to hold him by the reins. It would doubtless be careless to leave a horse in a street wholly unattended without tying him to something; but it is common for persons doing business in streets with horses to leave them standing in their immediate presence while they attend to business, and it is not unlawful for them to do so.

In *Hayman* v. *Hewitt, Peake N. P.* 170, Lord Kenyon said: "He was performing his duty while removing the goods into the house, and if every person who suffered a cart to remain in the street while he took goods out of it was obliged to employ another to look after his horse, it would be impossible for the business of the metropolis to go on."

A like view was taken in *Griggs* v. *Fleckenstein,* 14 *Minn.* 81, where the court said: "The degree of care required of the plaintiff, or those in charge of his horse at the time of the injury, is that which would be exercised by a person of ordinary care and prudence under like circumstances. It cannot be said that the fact of leaving the horse unhitched is in itself negligence; whether it is negligence to leave a horse unhitched must depend upon the disposition of the horse; whether he was under the observation and control of some

person all the time, and many other circumstances, and is a question to be determined by the jury from the facts in each case."

In the case under judgment there is nothing but the mere fact of leaving a gentle horse as he had been left for years under the observation and control of the driver. From that fact, under the conditions which must be conceded to exist in this case, no inference of negligence can arise. There are no circumstances to be submitted to a jury under the situation to which the request to charge applies from which a contrary inference can be drawn.

The trial court should have charged: "It is not negligence for the driver of a quiet, gentle horse to leave him untied and otherwise unattended on the side of a public highway while the driver is upon the sidewalk loading goods on the wagon."

There was evidence which would have fully justified the jury in finding that the horse was quiet and gentle, and that the driver was upon the sidewalk loading goods on the wagon at the time of the alleged injury, and that the horse had been used for years in that way without an accident.

The refusal of the trial court to charge as requested left the jury free to find a verdict against the defendant, although the jury was convinced that these facts were proven.

The judgment of the Supreme Court reversing the judgment of the trial court should be affirmed.

MAGIE, CHANCELLOR (dissenting). In my judgment the trial court committed no reversible error in declining to charge the request in question, because it immediately proceeded to give instructions on the subject which were, in my judgment, unexceptional.

*For affirmance*—VAN SYCKEL, DIXON, GARRISON, COLLINS, GARRETSON, KRUEGER, VREDENBURGH, VOORHEES.    8.

*For reversal*—THE CHANCELLOR, HENDRICKSON, PITNEY, ADAMS, VROOM.    5.