26 N.J. Super. 188 (1953)
97 A.2d 712
BERNARD PINCUS, PLAINTIFF-RESPONDENT,
v.
ROBERT SUBLETT, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued June 1, 1953.
Decided June 11, 1953.
*190 Mr. Harvey G. Stevenson argued the cause for the defendant-appellant (Messrs. Stevenson, Willette & McDermitt, attorneys).
Mr. Charles S. Witkowski argued the cause for the plaintiff-respondent (Mr. Joseph Teich, attorney; Mr. Frederick J. Fox, on the brief).
The opinion of the court was delivered by FREUND, S.J.A.D. (temporarily assigned).
The defendant, Robert Sublett, appeals from a jury verdict in favor of the plaintiff, Bernard Pincus, in the sum of $7,000 for personal injuries and property damage.
The plaintiff was driving his automobile along Victory Boulevard in Staten Island in a wooded area, when he saw a riderless horse galloping out of a side road. He brought his car to a standstill, but the horse jumped on to the hood of the car, breaking the windshield and inflicting other damage to the car, as well as personal injuries to the plaintiff.
Joan Moran, an experienced rider, 16 years of age, had *191 been exercising the horse, Lady Dorothy, for its owner, the defendant, admittedly as his agent. The horse was a mature gentle animal, and Joan had previously ridden it a number of times. She was riding with a Mr. O'Brien, who was mounted on a horse owned by him. The testimony discloses that the horses had been trotting, but were being walked along a bridle path adjoining Victory Boulevard, when some boys in a car on the highway blew the horn and shouted "Hiya, Babe." Lady Dorothy shied, unseated Joan who had been riding with a loose seat and relaxed reins, and galloped away for a distance of about 3 1/2 miles to the spot where she collided with the plaintiff's automobile.
The appellant urges that the trial court should not have permitted expert testimony as to the rider's control over the horse at the time it shied; that the question of the rider's control was factual and accordingly for jury determination. Mr. Ferguson, whose qualification as an expert, was conceded by the defendant, testified in reply to a hypothetical question that in his opinion "according to the place in which this horse was being ridden, alongside of a thoroughfare, traveled by automobiles, that horse should have been ridden with all the collection that a horse should have to have complete control." Further, in reply to questions by the court, the expert testified as follows:
"The Court: Well, the question was, do you think the horse was being ridden properly. The answer is yes or no.
The Witness: No.
The Court: All right. Now, you can explain why. Go ahead.
The Witness: The manner in which the horse was ridden at the time is used a great deal amongst horsemen on places where there is nothing to distract the animal, but along a highway where you have cars or anything that is liable to excite an animal, the horse should have been collected and balanced and under complete control of the rider, not with a slack rein, and not with the hands down as it was explained. I know nothing of this except the testimony that was given to me.
The Court: That's right. Your testimony is based on the question.
The Witness: Just what was given to me there. Now, under those conditions that were presented, the horse was not being handled properly."
*192 While the line between questions of skill to which an expert may legally testify and questions of mere judgment which are for the jury, is not always clearly definable, generally the rule is that the opinion of witnesses possessing peculiar skill is admissible whenever the subject matter of inquiry is such that inexperienced persons are unlikely to be capable of forming a correct judgment upon it, without such assistance. Cook v. State, 24 N.J.L. 843, 852 (E. & A. 1855); Crosby v. Wells, 73 N.J.L. 790, 798 (E. & A. 1907); Rempfer v. Deerfield Packing Corp., 4 N.J. 135 (1950); Clayton v. New Dreamland Roller Skating Rink, Inc., 14 N.J. Super. 390 (App. Div. 1951); Carbone v. Warburton, 22 N.J. Super. 5 (App. Div. 1952).
In the instant case, the qualifications of the expert being conceded, the only issue as to his testimony was whether in this automobile age the principles of horsemanship have become so uncommon to the knowledge of mankind that the jury should have the benefit of an expert's peculiar knowledge and experience to aid in arriving at its verdict. While perhaps years ago a jury would not have required the assistance of expert testimony as to horsemanship, there was no error in its admission here.
The appellant further urges that the defendant's motion for judgment should have been granted because negligence on his part or on the part of his agent was not established, nor was there proof of knowledge of any propensity in Lady Dorothy to act as she did. It is argued that the proximate cause of the accident was the action of the boys in the car, but the mere fact of the subsequent appearance on the highway of a riderless horse raised a presumption of negligence and it became the obligation of the defendant to explain such an occurrence. Kokoll v. Brohm & Buhl Lumber Co., 77 N.J.L. 169 (Sup. Ct. 1908); Francois v. Hanff, 77 N.J.L. 364 (Sup. Ct. 1909); Dennery v. Great A. & P. Tea Co., 82 N.J.L. 517 (E. & A. 1911). It is well settled that what frightens a horse is not material; what is material is the kind of attendance and control of the animal which common prudence requires. Koonz v. New York Mail Co., *193 72 N.J.L. 530 (E. & A. 1906). Nor is it necessary in order to establish negligence that the horse be known to be vicious, nervous, easily frightened or inclined to run away. Healey v. P. Ballantine & Sons, 66 N.J.L. 339 (Sup. Ct. 1901); Belles v. Kellner, 67 N.J.L. 255 (E. & A. 1902); Kastner v. Weinstein, 107 N.J.L. 254 (E. & A. 1931).
The appellant further argues that the trial court erred both in charging the jury as to the horse's disposition and in failing to charge one of the defendant's requests to the effect that because of the intervention of the wrongful conduct of others, in the absence of any known tendency in the horse to run away, the defendant was not guilty of negligence. It has been determined that neither the disposition of the horse nor the intervention of others is material to the negligence of the defendant, which consisted primarily in the rider's failure to have the horse under control in the circumstances under which it was then being ridden. Further, the evidence tended to show, and the jury could find, as it probably did, that not only should the horse have been ridden with greater collection at the precise place and time, but that its rider would have had greater control over the animal if it had been harnessed with a full bridle with snaffle and curb bit. In any event, the charge as given to the jury was not prejudicial to the defendant's case and it was for the jury to determine whether the manner in which the horse was being ridden and the kind of bridle and bit being used constituted negligence for which the defendant was liable. Koonz v. New York Mail Co., supra; Kastner v. Weinstein, supra.
Affirmed.