81 N.J. Super. 267 (1963)
195 A.2d 470
GUY DiNIZIO, INDIVIDUALLY AND AS GUARDIAN AD LITEM FOR INFANT JOHN DiNIZIO, PLAINTIFFS-APPELLANTS,
v.
EDWARD BURZYNSKI, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued September 30, 1963.
Decided November 21, 1963.
*268 Before Judges GAULKIN, LEWIS and LABRECQUE.
Mr. Robert A. Elkins argued the cause for the plaintiffs-appellants (Mr. Archie Elkins, attorney).
Mr. Jerome S. Lieb argued the cause for defendant-respondent (Messrs. Harkavy & Lieb, attorneys).
*269 The opinion of the court was delivered by LABRECQUE, J.S.C. (temporarily assigned).
The plaintiffs appeal from a judgment in favor of the defendant which followed a jury verdict of no cause for action. The suit arose out of an accident which occurred September 16, 1957 when the infant plaintiff, then six years of age, was struck by the defendant's automobile as he was crossing Park Avenue, Scotch Plains, New Jersey. He sustained a fractured skull and other injuries, for which he brought suit by his guardian ad litem, his father, who also joined individually for medical expenses and loss of services.
The accident occurred in clear weather directly in front of an elementary school. The time was 3:15 P.M.  shortly after school had been dismissed. Park Avenue, on which the defendant was proceeding, was a two-way street, approximately 40 feet wide. There was a line of parked cars on both sides of the street. Traffic was moving in each direction in the middle lanes. The infant plaintiff attempted to cross at a point not a crosswalk. As he did so, he was struck and knocked down.
The first point raised is that the trial court erroneously refused to permit the plaintiffs' expert witness to testify as to speed and stopping distances based upon skid marks and other facts in evidence. Although the accident occurred directly in front of one of two schools located on Park Avenue within a block of each other at a time when pupils were leaving for the day, no witness testified to the movement of the defendant's vehicle prior to the moment of impact. The defendant's deposition had been taken by the plaintiffs, however, and was read to the jury in its entirety. In it he deposed that he was familiar with the location and had observed children in the vicinity as he proceeded southerly toward the scene of the mishap. He also took notice of a "Caution School Zone" sign some 250 to 300 feet before the impact. He was travelling three or four car lengths behind a preceding car at between 20 and 25 miles an hour, when he first observed the *270 infant plaintiff about 18 feet ahead of him and five or six feet to his left. At that time the boy was running from an eight-to ten-foot space between two northbound cars. Defendant promptly applied his brakes. While he was unable to avoid striking the plaintiff, he was practically stopped at the moment of impact. The investigating police officer testified that the car left some 27 feet of skid marks.
The only independent eyewitness, one McNulty, testified that he had been proceeding in the line of traffic going in the opposite direction. He observed the infant plaintiff run across the lower part of the school yard, across the sidewalk and into the street until he was struck. The boy ran through an opening between the witness' car and the car ahead, passing about two feet behind the car ahead. He was struck on the right side by the left front of defendant's automobile which was stopped immediately thereafter with the boy a few feet in front of it.
Following the reading of the defendant's deposition, Charles Arthur Mead, a traffic engineer, was offered as a witness for the plaintiffs. He was, and had been for the past 11 years, the Director of the Traffic and Safety Department of the New Jersey Automobile Club, an affiliate of the American Automobile Association. He was also an educational consultant for the Foundation for Safety, an organization affiliated with the New Jersey Automobile Club, and a special consultant in traffic safety for the A.A.A. headquarters in Washington, D.C. He had served as an instructor of driver instructors for the Army, Navy and Marine Corps and the Post Office Department. He had designed and taught courses in accident prevention and vehicle operation for those organizations, for the Newark Police and Fire Academy and for the deputy sheriffs of Essex County. He had taught driver education courses for teachers. He had designed and helped teach a course in basic traffic regulations and control for the Essex County Sheriff's Department.
*271 He further testified:
"* * * We give driving tests. We run a battery of motor and sensory tests, reaction times, demonstrate stopping distances, as well as of course the rules of the road and good driving techniques.
Q. Now, Mr. Mead, are you familiar and have you been familiar with for some time with the formula and formulae for stopping distances, speeds and so forth? A. I have conducted a number of those types of demonstrations and tests myself, and there are various formula and charts for determining stopping distances on different types of pavement at varying speeds under varying conditions or weather.
Q. Now, Mr. Mead, is there a technical name for this science? A. Traffic engineering."
And further:
"Q. Would you tell us, Mr. Mead, as briefly as you can, the various elements that go into computing stopping distances and speeds? A. There is the surface of the roadway as it may be affected by weather. For example, is it concrete, or is it asphalt, is it gravel, is it wet or dry, is there any ice film? Then there is the vehicle itself, the weight of the vehicle and the braking ability of the vehicle.
Q. And are there also other variables such as reaction time and perception time that are taken into account? A. Well, yes. The question that you asked, however, was on the roadway itself I thought.
Q. And these formula and formulae that have been developed, have they been developed over a period of years, sir? A. Yes, they have.
Q. About how many years, approximately could you tell us? A. Well, there have been studies done on those for at least 15 years, 15 years to my knowledge, and longer than that I am sure.
Q. And were these studies based upon actual tests made under actual conditions that we are talking about? A. Yes. They were based on a series of tests of different types of vehicles, passenger vehicles, different types of roadways in each case, and they were worked out on level pavement of the various types concerned."
The trial court sustained objections to a number of hypothetical questions put to Mr. Mead, presumably on the ground that the testimony was not "needed." Two of these admittedly called for conclusions which invaded the province of the jury and were properly excluded. The remaining questions were calculated to elicit from the witness his opinion, based upon a hypothesis which included the length of the skid marks, as to the speed of the defendant's automobile at the *272 time the brakes were applied and whether it could have been stopped within 18 feet, going at a speed of 20-25 miles per hour.
Plaintiffs were permitted to make an offer of proof out of the presence of the jury, and in answer to the question relative to speed based upon the skid marks, the witness stated:
"* * * on a cement road, straight, dry, level, skid marks 27 feet long indicate that the vehicle was traveling at a minimum speed of slightly over 26 miles an hour at the moment that the wheels locked."
It also appeared that the witness was prepared to testify that in his opinion, which took into consideration the average reaction time, the distance travelled by the defendant's car from the time he would have first observed the infant plaintiff until the time of impact would have been 87 feet.
The proffered testimony was offered both as part of plaintiffs' main case and as affecting defendant's credibility. The questions here propounded are whether expert testimony was admissible for the purposes indicated, and whether the trial judge committed reversible error in excluding it.
The general rule as to the admissibility of expert testimony is to be found in Rempfer v. Deerfield Packing Corp., 4 N.J. 135, 141 (1950), to the effect that:
"* * * The true test of admissibility of such testimony is not whether the subject matter is common or uncommon or whether many persons or few have knowledge of the matter; but it is whether the witnesses offered as experts have peculiar knowledge or experience not common to the world which renders their opinions founded on such knowledge or experience any aid to the court or jury in determining the questions at issue."
No reported decision of our courts appears to have passed directly upon the point in issue. In Tischler v. Steinholtz, 99 N.J.L. 149 (E. & A. 1923), it was held that testimony as to location and length of skid marks was evidential upon the issue of negligence in the control and speed of defendant's *273 vehicle. But in Wisniewski v. Weinstock, 130 N.J.L. 58 (Sup. Ct. 1943), affirmed per curiam, 135 N.J.L. 202 (E. & A. 1947), cited by defendant, expert testimony, which had been offered to show from the skid marks left by an automobile the speed at which it was being driven, was excluded. The exclusion, however, was based upon the ground that the witness was not qualified and there was no determination as to the admissibility of such testimony from a qualified witness.
It is generally held in other jurisdictions that a qualified expert may give his opinion of the speed of a vehicle involved in an accident based upon tire or skid marks at the scene. 8 Am. Jur.2d, § 990, p. 543 (1963); Saladow v. Keystone Transportation Co., Inc., 241 App. Div. 161, 271 N.Y.S. 293 (App. Div. 1934); Heidner v. Germschied, 41 S.D. 430, 171 N.W. 208 (Sup. Ct. 1919); Jackson v. Vaughn, 204 Ala. 543, 86 So. 469 (Sup. Ct. 1920); Luethe v. Schmidt-Gaertner Co., 170 Wis. 590, 176 N.W. 63, 64 (Sup. Ct. 1920); McKinney v. Wintersteen, 122 Neb. 679, 241 N.W. 112 (Sup. Ct. 1932); Linde v. Emmick, 16 Cal. App.2d 676, 61 P.2d 338, 343 (Ct. App. 1936); Monday v. Millsaps, 37 Tenn. App. 371, 264 S.W.2d 6 (Ct. App. 1953); Tate v. Borgman, 167 Neb. 299, 92 N.W.2d 697, 701 (Sup. Ct. 1958); Grapentin v. Harvey, 262 Minn. 222, 114 N.W.2d 578, 581 (Sup. Ct. 1962); Dillenschneider v. Campbell, 350 S.W.2d 260, 266 (Mo. Ct. App. 1961).
The weight of authority likewise supports the admissibility of expert testimony in which reaction time plays a part. Thus in Henthorn v. M.G.C. Corporation, 1 Wis.2d 180, 83 N.W.2d 759, 765 (Sup. Ct. 1957), it was held to be error to have excluded the testimony of a qualified expert as to the average reaction time required to apply brakes, and the distance required to stop the vehicle under the conditions presented, where the testimony would have been relevant to indicate whether the distance required to stop the plaintiff's vehicle was greater than that available when he first observed the defendant's vehicle. Likewise, in Tate v. Borgman, supra, *274 evidence as to speed based upon reaction time was held admissible. And in Missouri-Kansas-Texas R. Co. v. Hamilton, 314 S.W.2d 114, 123 (Tex. Civ. App. 1958), evidence of stopping distance based on reaction time was held to have been properly admitted. The result reached in the latter case somewhat resembles our holding in Shutka v. Pennsylvania R. Co., 74 N.J. Super. 381, 403 (App. Div. 1962), certification denied 38 N.J. 183 (1962), where the issue was whether extra precautions were necessary to be employed by the defendant railroad company at an unprotected grade crossing. We there held that expert testimony was properly received which indicated that, by reason of obstructions, a motorist going at a stated speed would be unable to bring his car to a stop between the time that the train first became visible and the time he reached the crossing.
We hold, therefore, that in an appropriate case, where the speed of a vehicle is in issue, opinion evidence from qualified experts bearing thereon is properly receivable in evidence in reply to a hypothetical question which includes the evidence in the case concerning the course, length and nature of the skid marks left by such vehicle. Likewise, expert testimony as to average reaction time and opinion evidence as to speed and distance travelled based thereon may be received.
While not conceding the admissibility of the testimony in question, the defendant urges that, in the circumstances here presented, its exclusion did not constitute prejudicial error. We agree. It is generally within the discretion of the trial court to exclude remotely relevant evidence whose probative value is offset by the danger of undue consumption of trial time or the possible confusion of issues. Stoelting v. Hauck, 32 N.J. 87, 103 (1960). Likewise, it is not error to exclude testimony otherwise relevant which is repetitious of testimony or matter already in evidence and thus merely cumulative. Krolak v. Chicago Express, Inc., 10 N.J. Super. 60, 67 (App. Div. 1950); Feist & Feist, Inc. v. Taub, 105 N.J.L. 237 (E. & A. 1928); Stelwagon Manufacturing Co. v. Harrison, 6 N.J. Misc. 417, 141 A. 584 (Sup. Ct. 1928). *275 The same rule applies to hypothetical questions asked of expert witnesses. Angel v. Rand Express Lines, Inc., 66 N.J. Super. 77, 89 (App. Div. 1961).
Here we are unable to conclude that the trial judge committed an abuse of discretion. As has been pointed out above, he apparently determined that the evidence was not needed, i.e., that there was no necessity for it in view of the factual picture. Cf. Beck v. Monmouth Lumber Co., 137 N.J.L. 268, 277 (E. & A. 1948); Pincus v. Sublett, 26 N.J. Super. 188, 192 (App. Div. 1953), certification denied 13 N.J. 294 (1953); Angel v. Rand Express Lines, Inc., supra (66 N.J. Super., at p. 85). From the offer of proof it appears that the witness would have testified that from the skid marks the car was travelling about 26 miles an hour when the wheels locked. This constituted but a slight variation from the defendant's deposition that he was travelling at 20 to 25 miles an hour, especially since the jury must have realized that the defendant was estimating his speed. We also note in passing that it was not clear whether the skid marks referred to represented the distance the car actually travelled with the brakes locked or whether they were a combination of separate skid marks made by the front and rear wheels of the car.
It is suggested, however, that the testimony was admissible for the purpose of showing that the defendant could not have first observed the infant plaintiff 18 feet away as he deposed, but that the distance must have been much greater (87 feet), thus entitling the jury to consider whether the defendant should have maneuvered his car (as distinguished from stopping it) in order to avoid the plaintiff. We note that, in arriving at his distance of 87 feet, the witness took into consideration an additional factor which he designated as perception time, concerning which there appears to be no adequate explanation in the record. Additionally, we are unable to perceive how the jury could have concluded that the defendant should have maneuvered his car to avoid the infant plaintiff. It was uncontradicted that as he was proceeding in his lane of traffic he was hemmed in by a line of cars parked *276 on his right and a line of traffic moving almost "bumper to bumper" in the opposite direction on his left. From the testimony of both the defendant and the independent witness, the infant plaintiff was running. The police officer testified that when he picked the boy up, he was four feet into the defendant's lane and three feet in front of the car. Finally, even if the expert had been permitted to testify that, going at 26 miles per hour, the defendant would have required 87 feet from the time he first observed the plaintiff until he brought his vehicle to a stop, such testimony would have tended to disprove, rather than to prove, the defendant's negligence in the absence of proof that the infant plaintiff was observed at a greater distance. We cannot say that the exclusion was erroneous. R.R. 1:5-3(b), 4:63-1.
Turning to consideration of plaintiffs' criticism of the court's charge, we find that there was no objection thereto although an opportunity to do so was afforded counsel for the plaintiffs. The purpose of such an objection is to alert the court to the supposed error and thus afford it an opportunity for reconsideration and, if necessary, correction of its ruling. Gluckauf v. Pine Lake Beach Club, Inc., 78 N.J. Super. 8, 18 (App. Div. 1963). In the absence of such objection, a party is precluded from questioning the propriety of the charge on appeal. R.R. 4:52-1; Peter W. Kero, Inc. v. Terminal Construction Corp., 6 N.J. 361, 371 (1951); Lertch v. McLean, 18 N.J. 68, 73-74 (1955); Harpell v. Public Service Coordinated Transport, 20 N.J. 309, 318 (1956).
However, counsel (who did not participate in the trial below) argues that the criticized portions of the charge constituted plain error cognizable under R.R. 1:5-3(c) and applicable here by virtue of R.R. 2:5. Under this rule we may consider plain errors affecting the substantial rights of a party, although not brought to the attention of the trial court, when, from the whole record, we are convinced that substantial justice was not done below and that the asserted errors brought about an unjust result. Cf. Williamson v. Berger, 11 N.J. 500, 505 (1953); Gluckauf v. Pine Lake Beach *277 Club, Inc., supra, 78 N.J. Super., at p. 26. However, this contention was not embraced within the Statement of Questions Involved in plaintiffs' brief, as required by R.R. 1:7-1(c), made applicable here by R.R. 2:7-1; Brodzinsky v. Pulek, 75 N.J. Super. 40 (App. Div. 1962), certification denied 38 N.J. 304 (1962); Shaw v. Calgon, Inc., 35 N.J. Super. 319 (App. Div. 1955). Nor was our attention called, as required by the rule, to the fact that the issue was not raised below by timely objection to the charge. Buzza v. General Motors Corp., 49 N.J. Super. 322, 333 (App. Div. 1958). The requirements of R.R. 1:7-1(c) are declared to be in the highest degree mandatory, and ordinarily no point will be considered which is not set forth in or necessarily suggested by the Statement of Questions Involved. Gibson v. Pennsylvania Railroad Co., 14 N.J. Super. 425, 435 (App. Div. 1951). Such a point may not be raised for the first time at the oral argument (ibid.), or in the reply brief. Marchese v. Monaco, 52 N.J. Super. 474, 491 (App. Div. 1958), certification denied 28 N.J. 565 (1959).
In any event, we have examined the charge and find that, considered as a whole, it fairly and clearly presented a correct statement of the applicable law to the jury. Vadurro v. Yellow Cab Co. of Camden, 6 N.J. 102 (1950). If trial counsel felt that further clarification or amplification of any portion was necessary, it was his duty to have submitted requests to charge or to have called the court's attention to any asserted omission by a timely objection. R.R. 4:52-1. He failed to do either.
The judgment of the Law Division is accordingly affirmed.