747 A.2d 296 (2000)
329 N.J. Super. 191
Vincent R. PICCONE, Sr., and Margaret T. Piccone, h/w, Plaintiffs-Appellants,
v.
Larry E. STILES, Jr., and T.E. Warren, Inc., Defendants-Respondents, and
Mannington Township, County of Salem, and State of New Jersey, Defendants.
Superior Court of New Jersey, Appellate Division.
Submitted February 23, 2000.
Decided March 17, 2000.
*297 Andrew J. Brekus, Turnersville, for plaintiffs-appellants.
Joel Feldscher, Pennsauken, for defendants-respondents (Donna L. Freidel, on the brief).
Before Judges SKILLMAN, NEWMAN and FALL.
The opinion of the court was delivered by NEWMAN, J.A.D.
In an intersection accident case, plaintiff, Vincent R. Piccone, Sr., appeals from an order granting summary judgment in favor of defendants, Larry E. Stiles, Jr., the driver of the truck that struck plaintiff, and T.E. Warren, Inc., the owner of the truck, and dismissing plaintiff's complaint. We now reverse.
We summarize the relevant facts from a viewpoint favoring plaintiff, as we must do, in a summary judgment posture. On September 14, 1994, plaintiff was driving on County Road 646 in Mannington Township, Salem County. Stiles was operating a fully loaded 67,280 pound Mack truck, traveling westbound on County Road 540. According to plaintiff, he stopped at the intersection of County Road 540 and 646 which was controlled by a stop sign. After making observations of traffic on County Road 540, plaintiff proceeded into the intersection where the Mack truck collided with plaintiff's vehicle.
Stiles contends that he did not see plaintiff's vehicle stop at the stop sign and then proceed into the intersection. At deposition, he testified that he did not see the vehicle until it was directly in front of him, although he had a clear field of vision. In interrogatory answers, however, Stiles's response to how the accident happened was as follows:
I was driving westbound on County Route 540 near its intersection with County Route 646. Plaintiff was traveling Southbound on County Route 646. I was just about into the circle when I observed plaintiff's vehicle approaching the stop sign at the intersection at the circle. He did not hesitate or slow down and went right through the stop sign. I applied my brakes and tried to avoid him by steering to the left, however the passenger side front of my truck impacted with the front, driver's side of plaintiff's vehicle.
Stiles's deposition testimony reflected that he did not see plaintiff's vehicle until it was already in the intersection which differs from the version offered in his answers to interrogatories.
Stiles testified that he was traveling below the speed limit because he knew this to be a particularly dangerous intersection. When he saw plaintiff's vehicle, he applied his brakes, skidding, as measured by the investigating officer, eighty-three feet four inches before the collision and an additional sixty-eight feet two inches after the initial impact. The posted speed limit was fifty miles per hour. Stiles claimed that he did what he could to avoid the accident.
*298 In granting summary judgment, the motion judge had this to say:
Taking the facts that are before the Court before the parties in the case in the light most favorable to the plaintiff, and that is that the plaintiff had stopped at the stop sign intersection and then proceeded, there nevertheless is no evidence that the defendant had been exceeding the speed limit. And what is of concern to the Court here is that there is also no evidence before the Court that, for example, from an expert or any other source of behalf of the plaintiff, that any speed less than the lawful speed, lawful customary speed, would be anticipated by a reasonable person using that street to be the reasonable rate of speed as opposed to the lawful rate of speed, nonothing in evidence to show that aa person using that road could be expected to know from the conditions of the road that any different speed would be that which a reasonable person would use because of the physical characteristics of the intersection.
There is really nothing in that regard so that this Court sitting at the motion for summary judgment would have to conclude that no reasonable jury from anything in the evidence could find that the defendant was negligent in the operation of his vehicle which was a proximate cause of the occurrence which resulted in plaintiff's injuries.
On appeal, plaintiff contends that the motion judge erred in granting summary judgment because genuine issues of material facts were presented by the record, requiring a jury's determination at trial. Additionally, plaintiff asserts that he was entitled to test Stiles's credibility where inconsistent versions of what led up to the accident had been offered.
In reviewing any summary judgment motion, both the trial court and this court must consider the facts in a light most favorable to the non-moving party. Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540, 666 A.2d 146 (1995); R. 4:46-2.
The court must determine "whether the competent evidential materials ... are sufficient to permit a rational factfinder to resolve the alleged disputed issue in favor of the non-moving party." Brill, supra, 142 N.J. at 523, 666 A.2d 146. Summary judgment should be granted if "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law." R. 4:46-2(c).
"An issue of fact is genuine only if, considering the burden of persuasion at trial, the evidence submitted by the parties on the motion, together with all legitimate inferences therefrom favoring the non-moving party, would require submission of the issue to the trier of fact." Ibid. Our Supreme Court further explained, "a non-moving party cannot defeat a motion for summary judgment merely by pointing to any fact in dispute." Brill, supra, 142 N.J. at 529, 666 A.2d 146. Summary judgment is appropriate if the non-moving party only points to disputed issues of fact that are of an insubstantial nature. Ibid.
In Beck v. Washington, 149 N.J.Super. 569, 572, 374 A.2d 478 (App. Div.1977), we pointed out that the favored driver still has a continuing duty to exercise due care even though the disfavored driver has a stop sign to obey. Stiles's obligation to make proper observations and to take action to avoid an accident is still very much in issue, especially here, where an intersection accident took place.
There were no obstructions to impair Stiles's field of vision to the intersecting roadway. If Stiles's deposition version of the accident, that he did not see plaintiff's vehicle until it was into the intersection, is found credible, it undermines the extent and nature of the observations that Stiles made prior to the accident. Since inconsistent testimony has been presented between Stiles's deposition testimony and *299 his answers to interrogatories on the critical issue of Stiles's pre-accident observation of the roadway, plaintiff should have the opportunity to exploit these different versions so that the jury can assess Stiles's credibility in making a determination of fault for the accident.
Moreover, the approximate 150 feet of skid marks could also provide a basis for a jury to determine that Stiles was not paying sufficient attention to the roadway. While skidding in itself is not sufficient to justify an inference of negligence on the part of the motor vehicle operator, "skidding may be evidence of negligence if it appears that it was caused by the failure of the driver to take reasonable precautions to avoid it, when conditions of which he knew or should have known made such a result probable in the absence of such precautions." Mockler v. Russman, 102 N.J.Super. 582, 587-88, 246 A.2d 478 (App. Div.1968), certif. denied, 53 N.J. 270, 250 A.2d 135 (1969). Stiles was approaching an intersection and, therefore, had an obligation to reduce his speed. N.J.S.A. 39:4-98. While he claims that he did, the extensive skid marks may suggest otherwise and could impact on his credibility. See Nesta v. Meyer, 100 N.J.Super. 434, 441, 242 A.2d 386 (App.Div.1968) ("Where speed is in issue, the distance required to bring a vehicle to a stop, the skid marks left in connection therewith and the final position of the car, are significant elements."); DiNizio v. Burzynski, 81 N.J.Super. 267, 274, 195 A.2d 470 (App. Div.1963) ("[W]here the speed of a vehicle is in issue, opinion evidence from qualified experts bearing thereon is properly receivable in evidence in reply to a hypothetical question which includes the evidence in the case concerning the course, length and nature of the skid marks left by such vehicle.").
In sum, we are persuaded that this matter was not ripe for summary judgment disposition. There were genuine issues of material fact to be explored at the time of trial regarding Stiles's observations of the roadway prior to the accident and before he entered into the intersection.
Defendants contend that the jury could not reasonably attribute less than fifty-one percent of fault to plaintiff in this accident, and, therefore, summary judgment was properly granted. We disagree. At this juncture, we fail to see how negligence can be so finely quantified between the drivers. We believe that it must be left to the jury to determine who was negligent, and, assuming that comparative fault is found, what appropriate percentage of negligence should be allocated to each of the parties at fault.
The order granting summary judgment is reversed, and the matter is remanded for trial.