**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3099-24

VICTORIA MARTINEZ, as
Administratrix Ad Prosequendum
of the Estate of NANCY
MARTINEZ,

     Plaintiff-Appellant,

v.

JEFFREY H. POONER,

     Defendant-Respondent.

_____

Argued May 26, 2026 – Decided June 15, 2026

Before Judges Sabatino, Natali and Bergman.

On appeal from the Superior Court of New Jersey, Law Division, Atlantic County, Docket No. L-2352-22.

Stephen J. Pokiniewski (Edelstein Law LLP) argued the cause for appellant (Stephen J. Pokiniewski and Jay L. Edelstein (Edelstein Law LLP), on the briefs).

John M. Kearney argued the cause for respondent (Sellar Richardson, PC, attorneys; John M. Kearney and Bridget Saro, on the brief).

PER CURIAM

This appeal concerns the summary judgment dismissal of a wrongful death action arising out of a car accident that resulted in the death of Nancy Martinez, a pedestrian. Martinez was killed after she was struck by a car driven by defendant, Jeffrey Pooner, while she was attempting to cross a state highway at night at a non-controlled, unlit location. Defendant testified at his deposition that he did not see plaintiff walking across the highway until it was too late to avoid her.

Plaintiff's[1] theory of liability is that defendant should have seen her and taken evasive action after an oncoming vehicle about 700 feet away from defendant swerved. In support of that theory, plaintiff relied on the expert report of an accident reconstructionist, who opined that defendant had an estimated 9.1 seconds after the swerve to avoid a collision with her.

The expert did not render an opinion, however, attesting that defendant should have been able to see the swerve under the pertinent lighting and weather conditions. Nor did the expert opine as to whether defendant should have recognized the reason why the oncoming vehicle had swerved.

---

[1] The lawsuit was brought by the administratrix of Martinez's estate. Although the estate is the named plaintiff, we will refer to the decedent Martinez as "plaintiff," unless the context otherwise indicates.

2

We affirm the grant of summary judgment, because the evidence, including the expert report, is inadequate to create a genuine issue of material fact to support plaintiff's speculative theory of liability.

I.

The motion record reveals the following facts and relevant evidence, which we consider in a light most favorable to plaintiff. Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 535 (1995).

The Collision

In the evening of September 11, 2021, Mark Palermo was driving eastbound on U.S. Route 30 in Hammonton with his wife. According to Palermo, traffic was "heavier than normal" and visibility was "quite difficult" because it was dark outside and lighting was "poor."

As Palermo approached Route 30's intersection with County Road ("CR") 542, he noticed a car ahead of him in the right lane swerve into the left lane "pretty aggressively." Although Palermo did not know why the vehicle had swerved, he presumed it had done so to avoid an obstacle, and so he slowed his speed and changed to the left lane.

As Palermo continued in the eastbound left lane, he noticed a "silhouette" crossing the double yellow line towards the westbound traffic. Palermo

3

recognized the silhouette, roughly three feet away from his car, as a person, after he saw the "light gray, light white hoodie" she was wearing. Palermo noticed that the person seemed to have "no situational awareness of the surroundings."

Palermo recalled yelling to his wife, "oh my God, this person is gonna get hit" a "split second" before the pedestrian crossed into the westbound traffic lane and was struck by an oncoming Dodge pickup truck. The truck was driven by defendant, who was alone and heading to pick up some things at his office.

According to his deposition testimony, as defendant approached the intersection of Route 30 and CR542, he was going roughly twenty to twenty-five miles an hour and accelerating. Defendant did not recall seeing an oncoming vehicle swerve. However, he did notice a car directly in front of him, traveling the same direction as his truck, change from the left lane to the right lane without any swerving or urgency. Defendant found this unusual because, typically, vehicles "pass on the left" but did not know if the other driver "was trying to avoid something."

Immediately after seeing the other car change lanes, defendant saw a "silhouette" appear in front of his car. He "jammed on the brakes" but was unable to avoid the impact.

4

A-3099-24

<u>Police Investigation</u>

Police arrived at the scene shortly after, at approximately 9:01 p.m. Defendant declined to go to the hospital to take a blood test because of the COVID-19 pandemic but did consent to a breathalyzer test if needed. After performing an eye test[2] and failing to detect the odor of alcohol on defendant's breath, police on the scene concluded he was not under the influence of drugs or alcohol.

Other drivers had attempted to aid the pedestrian in the street. However, these attempts were unsuccessful and the pedestrian, who was identified by her photo ID as Nancy Martinez, the plaintiff, was pronounced dead at 10:08 p.m. While on the scene, officers learned that a Victoria Martinez was looking for her mother who had finished her shift at a local employer at 8:00 p.m.

An autopsy and toxicology report revealed that plaintiff's blood alcohol content ("BAC") was 0.319, well above the legal limit of 0.08.[3]

<u>This Wrongful Death Lawsuit</u>

Plaintiff filed a wrongful death complaint against defendant in the Law Division in August 2022. The complaint alleges that defendant was negligent

---

[2] Plaintiff does not contend that defendant may have been intoxicated.

[3] N.J.S.A. 39:4-50(a).

A-3099-24

in causing the collision and plaintiff's death.

Plaintiff's Accident Reconstruction Expert

During discovery, plaintiff furnished the expert report of an accident reconstructionist. The credentials of the expert are uncontested. He received a bachelor's degree from Franklin & Marshall College in both physics and mathematics, and a master's degree in science in mechanical engineering at the University of Virginia. The expert is a licensed traffic accident reconstructionist and is a member of the National Association of Professional Accident Reconstruction Specialists and the National Association of Traffic Accident Reconstructionists and Investigators. He has worked as a principal reconstruction engineer since 2016.

Applying certain formulas[4] used in his field, the expert calculated that, based on the position of defendant's truck after the accident and the resting place of plaintiff's body, defendant had been traveling roughly fifty miles an hour, the speed limit of Route 30. Accepting Palermo's testimony that Palermo had been traveling at roughly forty-five miles per hour, the expert determined that the "swerve" of the other vehicle, seemingly avoiding plaintiff, had occurred 9.1

---

[4] The expert applied what are known as the "Searle" and "Airborne" formulas. See Rice v. Miller, 455 N.J. Super. 90, 107 (App. Div. 2018) (recognizing the need for expert testimony to apply the Searle formula).

A-3099-24

seconds before the collision.  The expert further opined that, based on the "sight distance" from the westbound lane, defendant "would have been located within the available sight distance to be able [to] observe the area where Ms. Martinez had crossed."

In the final paragraph of the section of the report labeled "engineering analysis", the expert wrote:

> A typical nighttime perception-reaction time is 2.0 seconds.  A vehicle traveling at the speed limit of 50 miles per hour will traverse approximately 147 feet during a driver's perception-reaction time.  <u>If Mr. Pooner was traveling at the speed limit, and had he perceived the swerve by the eastbound sedan traveling in front of Mr. Palermo</u>, realizing that there was an object in the roadway at this point in time, Mr. Pooner would have traveled 147 feet during his perception-reaction phase before being in a position to apply a reaction to avoid a potential hazard.  At this point, Mr. Pooner would have been approximately 520 feet away from the point of impact.  A "normal," non-emergent deceleration rate is 0.2g.  At this rate, a vehicle traveling at 50 miles per hour can stop in approximately 417 feet.
>
> [(Emphasis added).]

The expert added, again using the conditional term "if" in describing defendant's possible observation of the swerve:

> Therefore, <u>if</u> Mr. Pooner had perceived the swerve by the sedan as an indicator of a potential hazard in the roadway and responded to the swerve by applying a

7

A-3099-24

normal, non-emergent brake application to slow his vehicle until he was able to identify what the potential hazard was, then Mr. Pooner would have been located a sufficient time and distance away from the point of impact to allow him the opportunity to perceive, react, and avoid the subject incident.

[(Emphasis added).]

In the final portion of the report labeled "Conclusions", the expert once again prefaced his analysis with the conditional term "if":

If Mr. Pooner had perceived the swerve by the sedan as an indicator of a potential hazard in the roadway, and responded to the swerve by applying a normal, non-emergent brake application to slow his vehicle until he was able to identify what the potential hazard, then Mr. Pooner would have been located a sufficient time and distance away from the point of impact to allow him the opportunity to perceive, react, and avoid the subject incident.

[(Emphasis added).]

Notably, at no point in his report did the expert opine that if defendant had observed the swerve, that observation would have resulted in him seeing plaintiff cross the street. He also did not opine that the accident may not have occurred, or may have been less fatal, had defendant slowed his speed upon observing the oncoming vehicle swerve. In addition, the expert did not calculate defendant's visibility from his headlights.

8

At his deposition, the expert acknowledged that he did not consider the "conduct or activity of the pedestrian" in formulating his opinions. He also admittedly did not make a determination as to whether plaintiff could have been seen by any of the other motorists on Route 30 before the accident. The expert did agree that, at the speed defendant was traveling, he would have been able to see "a violently swerving vehicle." Counsel for defendant then turned to questions regarding defendant's alleged duty to have seen the swerve:

> Q: Did Mr. Pooner have an obligation to see or look and observe the traffic traveling in the opposite direction some 700 feet away from his position?
>
> A: I don't have an opinion on that.
>
> Q: You don't have an opinion?
>
> A: No.
>
> Q: So there would be nothing wrong if he didn't look over there, right?
>
> A: Yeah, I don't - - again I don't have an opinion on that.
>
> Q: And how about even something violently swerving out of the right line into the left lane? Does he have an obligation somehow to react to that?
>
> A: Again, I don't have an opinion on that.
>
> Q: Is there some standard or something that you are aware of in your area that would require him to react to

9

A-3099-24

the conduct of a vehicle traveling in the opposite direction?

A: I don't know.

Motion Practice

Defendant moved to bar the expert's report and, relatedly, for summary judgment. Among other things, defendant argued the expert's views were inadmissible net opinion. The trial court heard oral argument on the motion and plaintiff's contentions in opposition.

As a preliminary matter, the motion judge rejected defendant's net opinion argument. The judge noted that the expert did perform "speed calculations . . . reaction calculations. All done, you know, within a reasonable degree of engineering certainty."

The judge identified "the real issue here" as being whether the expert had failed to give an opinion adequate to support liability. "[W]hat I believe [defense counsel] is saying is that the failure of . . . the engineer for the plaintiff to say it's not _if_ he would have seen [her]. He had to have said, within a reasonable degree of engineering certainty, [defendant] _should_ have seen [her]." (Emphasis added).

The judge further noted that, at his deposition, defendant had denied seeing a car "violently swerve." The judge also commented that specific facts

10

involving "visual acuity" and "how far away someone is" are "not in the normal k[e]n of the average juror." Furthermore, the judge noted that the expert had declined to give an opinion as to whether defendant had breached a duty by not observing the swerve.

Consequently, the judge granted defendant's motion for summary judgment with an accompanying memorandum of reasons. Within the memorandum, the judge did adopt certain facts from the expert's report, including that defendant was traveling fifty miles an hour at the point of impact (not twenty-five) and that the location of the collision was 100 feet from the intersection.

Critically, however, the judge concluded that the expert's "ultimate conclusion is based on unsupported speculation and unquantified possibilities" because the expert did not attest that defendant "should" have seen the eastbound vehicle swerve. Instead, the expert merely concluded that "if" defendant had seen the swerve, he would have had time to take protective action. The judge noted that defendant's deposition testimony (which was unrefuted by any fact witness) "clearly established [defendant] did not see the sedan in the right eastbound lane swerve."

11

Lastly, the judge concluded that none of the other witness testimony indicated that defendant "was negligent at all" and therefore granted defendant summary judgment.

Motion for Reconsideration

Plaintiff moved for reconsideration. At this second oral argument, plaintiff contended that "there is a sufficient basis for an issue of fact as to whether the defendant could have seen the swerve." Defendant again emphasized that, according to his deposition, he did not see a vehicle swerve and only spotted the pedestrian a split second before impact.

The judge denied the motion. In doing so, the judge clarified his ruling and stated that he regarded the methodology and reasoning used in the expert's report to be sound. Nevertheless, as the judge put it, the situation is not so much one of "net opinion" as much as it is a situation of "no opinion." The judge again emphasized the expert report's lack of an assertion that defendant should have seen the oncoming vehicle swerve. The judge concluded the report simply was not "competent, credible evidence" to establish defendant's negligence.

This appeal followed.

A-3099-24

II.

In reviewing the trial court's grant of summary judgment, we apply familiar principles. A trial court's grant of a summary judgment motion is reviewed de novo, utilizing the same legal standards that govern such motions. Branch v. Cream-O-Land Dairy, 244 N.J. 567, 582 (2021). "The appellate court considers whether the competent evidential materials presented, when viewed in the light most favorable to the non-moving party, are sufficient to permit a rational factfinder to resolve the alleged disputed issue in favor of the non-moving party." In re Est. of Jones, 259 N.J. 584, 594 (2025) (internal quotation marks omitted); see Brill, 142 N.J. at 540; see also R. 4:46-2(c).

We also are guided by well-established principles of automobile negligence law. The classic elements of negligence liability are: (1) a duty of care, (2) a breach of that duty, (3) proximate causation, and (4) injury. Townsend v. Pierre, 221 N.J. 36, 51 (2015) (citing Polzo v. Cnty. of Essex, 196 N.J. 569, 584 (2008)). A plaintiff bears the burden of proving negligence, see Reichert v. Vegholm, 366 N.J. Super. 209, 213 (App. Div. 2004), and must prove that unreasonable acts or omissions by the defendant proximately caused his or her injuries, Camp v. Jiffy Lube No. 114, 309 N.J. Super. 305, 309-11 (App. Div. 1998).

13

In the specific context of negligence by a motor vehicle driver, a defendant has a duty to use reasonable care when operating a vehicle on a public roadway. Tichenor v. Santillo, 218 N.J. Super. 165,170 (App. Div. 1987). That duty includes a duty to avoid striking pedestrians even where, as here, the driver had been driving within the posted speed limit. Piccone v. Stiles, 329 N.J. Super. 191, 195-96 (App. Div. 2000) (recognizing that a driver can be negligent in causing an accident even when the driver had driven the speed limit); see also N.J.S.A. 39:4-32(g) ("[n]othing contained herein shall relieve a driver from the duty to exercise due care for any pedestrian upon a roadway").

As the motion judge rightly focused the analysis, the key problem here for plaintiff is in establishing sufficient evidence for a jury to conclude that the defendant breached a duty of care to a pedestrian who was walking across a state highway in the dark at a location without an intersection, traffic signal, or crosswalk. Plaintiff hinged her claim on a core premise that defendant should have been alerted, by the swerve of a car about 700 feet away, that a person was crossing the highway on foot.

But, as the judge found, plaintiff failed to present any competent evidence that defendant could have, would have, or should have seen the swerve.

14

Plaintiff's expert repeatedly declined to offer an opinion to support that premise.[5]

Nor was there any other evidence that the swerve was actually visible to defendant, given the distances, night-time conditions, the distraction and other effects of traffic, and other variables. The sole testimony on the subject was from defendant himself, who testified under oath that he did not see the actions of the oncoming vehicle.

Moreover, there is no evidence that a prudent driver would have necessarily recognized that the swerve signified that a person was walking across the highway. The driver of the oncoming car could have swerved for other reasons, such as dropping an item, avoiding stationary debris, or suddenly realizing the driver's vehicle should be in another lane to make an upcoming turn.

Quite simply, as the motion judge concluded, the plaintiff's theory of negligence liability is based on speculation. Claims must not go to a jury based on pure speculation. Merchants Express Money Order Co. v. Sun Nat'l Bank, 374 N.J. Super. 556, 563 (App. Div. 2005) (noting that mere speculation will

---

[5] We need not address whether such an expert opinion contradicting defendant's sworn factual testimony would have been permissible under Townsend, 221 N.J. at 58.

15

not bar summary judgment); see also Hoffman v. AsSeenOnTV.Com, Inc., 404 N.J. Super. 415, 426 (App. Div. 2009) (similarly applying this principle).

Given this critical defect in plaintiff's case, the trial court correctly granted summary judgment, even viewing the record in a light most favorable to plaintiff.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Harley

Clerk of the Appellate Division

16