Cook v. The State.

---

### SILAS COOK v. THE STATE.

1. A general verdict of guilty upon an indictment containing two counts, one for rape, and another for assault and battery with intent to commit a rape, is good. The counts are not inconsistent; the defendant, if guilty of the rape, is guilty of the assault, but the assault is merged in the rape, and the punishment will be for the rape only.

2. When a general verdict of guilty is rendered upon an indictment containing a count for rape and one for assault with intent, &c., there being but one offence, and a general judgment given thereon, the judgment will not be reversed, but it will be intended that the sentence was pronounced according to law, for the rape only.

3. On the trial of indictments, where the defendant is entitled to three peremptory challenges, the State is also entitled to three peremptory challenges.

4. Evidence of a conversation between a witness and the defendant, introduced by the State, will not make competent a paper read by the defendant during the interview, which was previously prepared, and formed no part of the conversation. Introduction of irrelevant testimony on one side will not make irrelevant testimony competent on the other side.

5. A party cannot give in evidence his own reply to a statement made

to him, when that statement was introduced in evidence by himself, although the other side have cross-examined the witness as to such statement.

6. A physician cannot be asked his *opinion*, as an expert, upon matters of which others, not possessing his professional skill, could judge as correctly as the physician.

---

The writ of error in this case removed an indictment against the plaintiff, found and tried in the Middlesex Oyer and Terminer. The indictment contained two counts; the first for a rape, the second for assault and battery, with intent to commit a rape.

The verdict, as entered in the record, was that the defendant "is guilty of the premises in the said indictment on him above charged, in manner and form as by the indictment aforesaid, is within alleged against him." The judgment was, "that the said Silas Cook be convicted of the *offence* in the said indictment charged, and it is further adjudged by the court here, and the said Silas Cook, for the *offence* aforesaid, do pay a fine," &c.

Five different bills of exceptions were taken, and sealed to the ruling of the court, in the progress of the trial. These are sufficiently stated in the opinion of the majority of the court, as delivered by the Chief Justice. Upon these, and the entry of the verdict and judgment, the errors were assigned.

The cause was argued by Mr. *Van Dyke* and Mr. *Pennington* for the plaintiff in error, and Mr. *G. A. Vroom* and Mr. *Parker* for the State.

The opinion of the court was delivered by

CHIEF JUSTICE. The first error assigned, is that the verdict rendered by the jury on the indictment, is repugnant, inconsistent and illegal.

The indictment contains two counts—the first, for a rape; the second, for an assault with intent to commit a rape. There is a general verdict of guilty. This, it is said, renders the verdict repugnant and illegal, because the defendant cannot be guilty of both crimes.

Cook v. The State.

It is certainly true, that when a defendant is indicted, simply for an assault with intent to commit a rape, and upon the trial it appears that the rape was actually committed, the defendant must be acquitted. Not because the defendant was not guilty of the assault with intent to commit the rape, but because the lesser crime is merged in the greater. *Rex* v. *Harmwood*, 1 *East's P. C.* 411, 440; *Archb. Cr. P.* 261, (1*st Am. Ed.*)

The acquittal is not because the commission of the rape is repugnant to, or inconsistent with the assault, with intent to commit it, but because the latter offence becomes a mere ingredient of the former, and is merged in it. An assault, with intent to commit a rape, constitutes in itself a crime, though the purpose be not accomplished. If the purpose be accomplished, the assault, with a criminal intent, and the execution of that intent, together, constitute one crime. It is well observed by Chief Justice Tilghman, "if the defendant were guilty of the rape, he must have been guilty of the assault, with intent to ravish; and if he was not guilty of the assault with intent to ravish, he could not be guilty of the rape." 12 *Serg. & R.* 69. There is then, nothing either inconsistent or repugnant in the verdict, finding him guilty of both acts. On the contrary, it would seem to have been incongruous and inconsistent for the jury to have pronounced the defendant guilty of the crime, and not guilty of the assault, with intent to commit it.

There is no inconsistency or repugnancy in the record.

But it may be objected, (and this would seem to be the point of the complaint,) that the defendant has been convicted of two distinct crimes, and sentence has been passed against him upon both counts, when, in point of law, he can be punished but for one offence.

In *Harman* v. *Commonwealth*, 12 *Serg. & Rawle* 69, upon an indictment precisely similar to that now under consideration, the jury having returned a verdict of guilty, the court passed sentence upon the defendant, on the count for the rape. The point now under consideration, did not, therefore, arise in that case. But upon principle, it is

apparent that the defendant is punished not for two crimes, but for one only. Many of the forms of indictment unite the two charges in the same count. Thus the ancient form of indictment charged, " that the defendant feloniously made an assault with intent to ravish, and carnally know A. B., and the said A. B. then and there feloniously did ravish and carnally know. And under such an indictment, the defendant might have been convicted either of a rape, or of an assault with intent to commit the rape." *Harman* v. *Commonwealth*, 12 *Serg. & R.* 71.

So an indictment for an assault with intent to commit a rape, usually contains a count for a simple assault and battery. The defendant may be convicted either upon the first or the second count. But a conviction of the assault, with intent to commit a rape, necessarily includes a conviction for the simple assault. And if convicted of the greater offence, a general verdict of guilty would be the usual and proper form of finding.

It is usual to charge in the same indictment, and sometimes in the same count, a defendant with breaking and entering a dwelling by night, with intent to steal, and there stealing— thus uniting a charge for burglary with a charge for larceny. And in such case, he may be convicted of the larceny only, or of the burglary. But if it be proved that he actually committed the larceny, as well as the burglary, he will not be convicted of both offences, although he is found guilty as he stands charged in the indictment. In such case two punishments would not be inflicted. " Upon a general conviction, the jury finding all the averments true, the charge of larceny is considered as embraced in the charge of burglary, and one punishment is imposed as upon one combined offence." *Commonwealth* v. *Hope*, 22 *Pick.* 5.

So in the case under consideration—the assault with intent to commit the rape, and its actual commission, were parts of one and the same transaction, and constitute but one crime. For that, and for that alone, he was sentenced. The court cannot and will not presume that he was punished for two offences, when the record clearly shows that, in point

Cook v. The State.

of fact, he was guilty of but one, and that in judgment of law, he is convicted but of one.

The next error assigned is, that the attorney for The State was permitted to challenge peremptorily, and without cause by him assigned, three of the jurors out of the panel of forty-eight, summoned and returned to try the said indictment. By the act of twelfth February, 1852, (*Pamph. Laws* 32), it is enacted, that upon the trial of any indictment, the attorney general or prosecutor of the pleas of the state, shall be entitled to challenge peremptorily, three of the panel of jurors summoned, and returned by the sheriff or other officer; provided, that this act shall not apply to cases of *struck juries*.

The ground relied upon in support of the error assigned, is, that the term *struck juries*, used in the act, was designed to include not only struck juries, technically so called, but also all juries, where the defendant is entitled to a service of the panel, and to twenty peremptory challenges. In short, to all special panels, not summoned and arrayed in the ordinary mode. The reason urged in support of this view is, that struck juries are almost unknown in criminal practice, and that, therefore, the legislature must have designed to refer to those special juries, where twenty peremptory challenges are allowed to the defendant. But the statute (*Rev. Stat.* 968, §§ 15–16,) expressly authorizes struck juries, in all criminal cases, except where the party is entitled to twenty peremptory challenges. Thus the statute clearly distinguishes between the two kinds of juries, allowing the one, only when the party is not entitled to the other. The term " struck juries," has a technical and well defined meaning, and was so used in the statute. The State was legally entitled to three peremptory challenges. This error is not sustained.

It is further assigned for error, that the court, upon the trial, refused to permit John Potter, a witness on the part of The State, upon his cross-examination, by the defendant, to read a paper then shown to him, and to answer whether its contents were not the same as the contents of a paper

read to the witness by the defendant. The object of the enquiry was to identify the paper, in order to its being read in evidence. The mode of identification was proper, and the only enquiry, is whether the paper itself was competent to be read in evidence.

The paper was a written statement, prepared by the defendant himself, of the facts touching the transaction for which he stood indicted. It was clearly incompetent, unless legalized by the previous examination of the witness, on the part of The State. It becomes necessary, therefore, to examine under what circumstances the evidence was offered.

The witness, having detailed what transpired at an interview between himself, his wife, the prosecutrix, and the defendant, added,—"I told him (the defendant) I thought he was a gentleman, now I believed him to be a    *    *    * scoundrel. He said if I would give him a few minutes at his office he would satisfy me he was as much of a gentleman as ever.    *    *    *    Some time after this, I called at the doctor's office to see what he had to say. He then asked me what he was charged with ? I told him, with committing a rape on my wife. He said Mrs. Clark did not tell him so, or my wife did not tell Mrs. Clark so, I can't say which. He then went into the back room and got a book with plates in it, which he showed me, and a paper which he said contained a statement of the facts he was going to swear to, and he read it to me. I told him it did not alter my opinion." And being cross-examined, he said, "I was much excited at the doctor when he read the paper; it was one or two pages or more; can't say it began 'a statement;' the paper shown me looks like the one he read, but there is nothing about it by which I can identify it; I can't pretend to say what he read; I was too much excited; I believe he denied any improper conduct in my house." And thereupon, with the view of offering the paper itself in evidence, the question was asked and overruled, which forms the subject of complaint.

If the paper is competent evidence, it must be either because The State had proved that the defendant was

charged with the crime, and therefore he was entitled to his reply, or because the paper was a part of the defendant's answer to the charge, and necessary to explain something that The State had proved that he said. Is it competent on either ground?

1. It is contended, that if The State puts in evidence the fact that the defendant was, by the witness under examination, charged with the commission of the crime for which he stands indicted, the defendant is entitled to put in evidence his answer to that charge. Upon the ground, it is said, that if you give in evidence, part of a conversation or of a transaction, you must give in evidence the whole of it. But has it ever been contended, that if The State gave in evidence that the defendant was examined before a magistrate, touching the offence, that the defendant was therefore entitled to offer the examination in evidence, in his own behalf.

The rule, as stated in the book, is simply this—

Whenever a confession is given in evidence, the whole of what has been confessed must be taken together, in order to show distinctly the full meaning and sense of the party, that what is given in evidence may be neither more nor less than the prisoner intended. 1 *Phil. Ev.* 84, 87, 88. In criminal, as well as in civil cases, the whole of an admission made by a party is to be taken together. *Roscoe's Cr. Ev.* 41 ; 2 *Brod. & Bingh.* 287, " *Queen's case.*" It is, says Mr. Starkie, a general rule, that whenever a party makes a statement or admission, whether it be oral or written, which is afterwards used against him as evidence of the stated or admitted fact, the whole of the cotemporaneous statement or declaration must be received, the part which operates for him as well as that which makes against him. 1 *Stark. Ev.* 359.

The object of the rule is not to permit the party to offer his acts and declarations in his own behalf, and thus to manufacture evidence for himself, but it is solely to show the full sense and meaning of the evidence offered against him on the part of The State, in order that it may be neither more nor less than the prisoner intended.

Perhaps the rule in criminal cases may be thus briefly stated. If, on the trial of an indictment, The State offers in evidence any verbal or written declaration of the defendant, or any act done by him, admitting his guilt either expressly or by implication, or from which a jury may legitimately draw any inference, prejudicial to the defendant's claim of innocence, the defendant is entitled to offer in evidence the whole of the conversation, writing or transaction.

Applying that principle to the present case, it may be asked, what is there that the writing in question can possibly explain? It is worthy of notice, that the paper in question was not prepared as a reply to the charge then made by the defendant. After making a reply to the charge of the witness, the defendant went into another room, and got a book with plates in it, which was exhibited to the witness, and a paper previously prepared, which he read, doubtless for the purpose of satisfying the witness of the propriety of his conduct. But assuming that the paper may be taken strictly as a reply to the charge, can it qualify any admission? None had been made. Can it tend to show the true sense and meaning of anything the defendant had said? The State had, in fact, proved no parol or written admission by the defendant, and no act of his on the occasion of the conversation with the witness, from which his guilt could be inferred. It is apparent, from the whole evidence, that from first to last, the defendant utterly denied his guilt. There is nothing in his statement from which the jury could possibly have drawn an inference unfavorable to his innocence. The court must have told the jury that the whole case made by The State, rested upon the testimony of the prosecutrix alone, and could derive no support from any statement, admission or act of the defendant, at the time of his conversation with the witness. The writing, therefore, was properly overruled.

It is asked, why did The State prove that the charge was made, unless to prejudice the defendant's case in the minds

of the jury? It may have been asked in the expectation of eliciting some material testimony, and failed of its object. The question may not have been asked at all, but the witness, as is frequently the case, may have been placed upon the stand and directed to make his statement in his own way. But, however, the subject may have been introduced, by design or by accident, with a good or bad motive, the testimony, so far as it went, was immaterial and irrelevant. Nothing had been proved against the defendant, on the part of the state, in the course of the conversation with the witness, which required an explanation, or which the writing could have corrected or elucidated. There is no better settled rule of law, than that the introduction of irrelevant or immaterial testimony by one party, can never justify the introduction of illegal testimony by the other.

It is further assigned for error, that the court refused to permit Deborah Clark to prove what reply the defendant made to a complaint she made against him, and when she told him what Mrs. Potter charged him with.

Mrs. Clark was called on the part of the defendant, for the purpose of impeaching the state's evidence. The defendant, himself, had proved by her, what charges the witness made against him, and that she had communicated these charges to him. The whole evidence was on his part. The state's counsel did nothing more than cross-examine the witness, as to the precise complaint she did make. This was strictly within the limits of fair cross-examination—for if the state's counsel could show, that what the witness told the defendant were the charges made against him by the prosecutrix, materially varied from what she testified upon the trial the prosecutrix had said, it would have gone far to weaken the force of her testimony. The state put in evidence no new, material fact, which it was relevant or material for the defendant to contradict or explain.

It is further assigned for error, that the court, upon the trial of the cause, overruled two questions propounded by the counsel of the defendant, to a physician, to ascertain his opinion as an expert upon the subject matter of the ques-

tion.   These questions were, first—From your knowledge of the human system and of the human frame, as a physician and surgeon, could a rape have been committed in the mode and manner described by the prosecutrix?   And second— From your knowledge of the female mind and the female system, would a woman, placed in the situation testified to by the prosecutrix, be most likely to swoon and lose her consciousness, or be nerved with more than usual strength and power of resistance?

The line between questions of science or professional skill, to which an expert may legally testify, and questions of mere judgment, which the jury alone are to answer upon the *facts* proved, is not always susceptible of being clearly defined. The distinction stated by Mr. Smith, in his notes to Carter & Boehm, (1 *Smith's L. Cas.* 206,) is, perhaps, as satisfactory a statement of the rule as can be made.   " The opinion of witnesses, possessing peculiar skill, is admissible whenever the subject matter of inquiry is such, that inexperienced persons are unlikely to prove capable of forming a correct judgment upon it, without such assistance ; in other words, when it so far partakes of the nature of a science as to require a course of previous habit or study, in order to the attainment of a knowledge of it ; but the opinion of witnesses cannot be received, when the inquiry is into a subject matter, the nature of which is not such as to require any peculiar habits or study, in order to qualify a man to understand it."

Upon the facts stated by the prosecutrix, it is clear that the first question is not within the rule.   No peculiar knowledge of the human system was necessary to answer it.   It was a mere question of relative strength or mechanical possibility, which an athlete or a mechanic could have answered as well as a physician, and every man upon the jury as well as either.

The second question is open to more serious objection.   The prosecutrix had sworn, that at the commission of the crime, she was very much overcome and made no noise or outcry.   The physician is asked—not from his knowledge of the prosecu-

trix, of her peculiar constitutional temperament, but from his knowledge of the female mind and system, whether a woman placed in the situation described by the prosecutrix, would be most *likely* to swoon or to be nerved with unusual strength. The express testimony of a witness cannot be impeached by a mere opinion, that the fact stated is likely or unlikely. It is apparent, moreover, that the question, as propounded, was not susceptible of a rational answer. Women of different nervous temperaments, would, in a given situation, have acted differently, and the same woman, under one state of health or nervous excitability, would act very differently from what she would under another. The question is neither legal nor susceptible of a satisfactory answer, and was, therefore, properly overruled.

I find no error in the record.

It has been urged upon the consideration of the court, that the evidence of the defendant's guilt is not of the most satisfactory character, and therefore, that the rules of law should be applied with the utmost stringency in his favor. Every defendant, no matter how clear the evidence of his guilt, is entitled to the benefit of every legal principle which can avail him in his defence. If his conviction has been effected, in violation of a single rule of law, he is entitled to a reversal. Can the defendant ask for more?

Upon what ground, moreover, are this court to sit in judgment upon the finding of the jury? They have pronounced the defendant guilty. Upon what principle are this court to assume his innocence, and to stretch legal principles to suit their own standard of the weight of the testimony. This would be, at best, an assumption of power; an unwarrantable intrusion into the province of the jury. It would be neither more nor less than an attempt, under color of correcting legal errors, to re-try the cause upon its merits, and a most dangerous innovation in the administration of criminal law.

The judgment should be affirmed.

Judgment affirmed.

*For Affirmance*—The Chief Justice and Judges Arrowsmith, Risley, Elmer, Potts and Wills.

*For Reversal*—The Chancellor and Judges Ogden, Cornelison, Huyler and Valentine.

Cited in *Johnson* v. *State*, 2 *Dutch.* 321–324; *Donnelly* v. *State, Id.* 471; *State* v. *Johnson*, 1 *Vr.* 187; *State* v. *Wyckoff*, 2 *Vr.* 66.