**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2580-23

MARIO QUESADA,

     Plaintiff-Appellant,

v.

COMPASSION FIRST PET
HOSPITALS, and RED BANK
VETERINARY HOSPITAL,[1]

     Defendants-Respondents.

_____

        Submitted February 24, 2026 – Decided March 12, 2026

        Before Judges Sumners and Chase.

        On appeal from the Superior Court of New Jersey, Law Division, Hudson County, Docket No. L-2597-19.

        Peter A. Ouda, LLC, attorney for appellant.

---

[1] Veterinary Services of New Jersey, P.C., d/b/a Red Bank Veterinary Hospital and Veterinary Specialists of North America, LLC, d/b/a Compassion First Pet Hospital, i/p/a Compassion First Pet Hospital and Red Bank Veterinary Hospital was incorrectly pled as Compassion First Pet Hospitals and Red Bank Veterinary Hospital.

Haworth Barber & Gerstman LLC, attorneys for respondents (Richard Barber and Joelle Tadros, on the brief).

PER CURIAM

Plaintiff Mario Quesada appeals from a final judgment following a jury verdict of no cause found in favor of defendants Compassion First Pet Hospitals and Red Bank Veterinary Hospital (RBVH). After reviewing the trial record and relevant law, we find no reversible error and affirm.

I.

Plaintiff adopted his cat, Amor, in 2013, as a therapy cat who provided emotional support following traumatic personal losses. In 2014, Amor was diagnosed with heart disease.

In June 2017, plaintiff returned home to his apartment, where he lived with his mother, father, and Amor. Amor could not move and appeared paralyzed, though he was able to drag himself with his front two paws. Plaintiff brought Amor to RBVH, where staff examined Amor.

Afterwards, the veterinarian, Dr. Gregory Brethel, explained to plaintiff that Amor had gone into heart failure, and that he had a blood clot cut off the blood supply to his back legs. Dr. Brethel recommended euthanizing Amor.

A-2580-23

After speaking with his father by phone, plaintiff consented to proceed with the euthanasia process. Plaintiff was able to say goodbye to Amor, who was then euthanized. Staff then escorted plaintiff to a bereavement room, where Dr. Brethel brought the now-deceased Amor to plaintiff.

Dr. Brethel came back after some time and, upon consent from plaintiff, removed Amor. A few minutes later, Dr. Brethel returned to explain to plaintiff that Amor had bitten a technician before he was euthanized and they were obligated by law to perform a rabies test. Dr. Brethel explained that rabies testing required a brain tissue sample sent to the lab.

While at RBVH, plaintiff filled out paperwork for Armor to be cremated at Hamilton Pet Meadow (HPM). Plaintiff inquired about viewing Amor before the cremation, and the RBVH staff member explained that he would have to arrange things directly with HPM. Plaintiff then left the building to return home.

Days later, Amor's negative result for rabies came back from the lab. RBVH staff then explained to plaintiff that they were going to transport Amor to HPM. Plaintiff then spoke to the staff at HPM and scheduled a viewing to see Amor.

Plaintiff drove to HPM for his viewing and a staff member named Debra Bjorling walked out to greet him in the parking lot. Bjorling explained the

3

process to plaintiff, stating that he could watch the cremation on a television screen, and that there was a towel over Amor. Plaintiff questioned the need for the towel, and Bjorling revealed that the towel was to cover up the mess due to Amor no longer having his head. Bjorling directed him to the viewing room while she took a phone call. Plaintiff then proceeded to enter the room to find Amor on a table with a blue towel. When Bjorling returned and began showing him around the room and pointing out the television, plaintiff asked why the head was missing, and Bjorling explained that the RBVH always removed the head for the rabies test.

Following Bjorling's recommendation, plaintiff called RBVH who confirmed that, for rabies testing, the hospital was required by law to send the head to the Department of Health (DOH). RBVH explained that they always requested for the head to be sent back, but that the DOH had never sent one back. Plaintiff then called the DOH multiple times trying to locate Amor's head. Finally, the DOH returned plaintiff's call, but stated it was too late to recover the head as it had been disposed of as medical waste.

Plaintiff left HPM and returned to his home. Distressed, plaintiff contacted family, friends, a counselor, and eventually the police, who conducted

4

a welfare check and provided a crisis hotline number after he declined going to the hospital.

Plaintiff utilized the crisis hotline in June, July, and August of 2017. Finding it unhelpful, plaintiff searched and found services through a licensed art therapist, a licensed therapist, a licensed psychologist, a licensed social worker, and two psychiatrists. He was eventually diagnosed with post-traumatic stress disorder, generalized anxiety, and major depressive disorder.

Plaintiff then filed a complaint against defendants for negligent infliction of emotional distress, various other negligence claims, and bailment. Defendants filed a motion in lieu of answer to dismiss the complaint for failure to state a claim. The trial court dismissed plaintiff's complaint and in an unpublished decision, we reversed the trial court's dismissal of plaintiff's complaint and remanded for further proceedings. Mario Quesada v. Compassion First Pet Hospitals and Red Bank Veterinary Hospital, A-1226-19 (April 1, 2021).

With the complaint reinstated, defendants filed an answer and a renewed motion to dismiss plaintiff's complaint in February 2022. The trial court granted defendants' motion to dismiss as it related to certain negligence counts, finding that plaintiff was required to file an affidavit of merit for three of those counts,

A-2580-23

but denied the motion to dismiss on all remaining counts. The remaining counts that survived were for negligent infliction of emotional distress, negligence for misleading and concealing information regarding rabies testing, negligence for failure to provide adequate information, and bailment.

Defendants moved for summary judgment on the remaining counts and to bar plaintiff's expert testimony on the standard of care. Plaintiff cross-moved to bar defendant's expert on the standard of care. The court denied defendants' motion for summary judgment. The court found expert testimony would be useful to help establish the applicable standard of care and denied both requests to bar the parties' respective experts.

The parties filed multiple motions in limine, including one by defendants to bar photographs and videos of Amor, and one by plaintiff to bar defendants' use of testimony from another expert, Dr. Michael Laikin. The court addressed plaintiff's motion to bar defendants' use of Dr. Laikin's testimony and subsequently denied the motion. The court also granted defendants' motion to bar photographs and the video of Amor.

Jury trial was held from March 5 to 14, 2024. The jury found defendants not negligent in a five-to-one verdict. This appeal follows.

A-2580-23

## II.

In seeking to set aside the verdict plaintiff argues on appeal that: (1) the jury instruction and verdict sheet tainted the jury's consideration of negligence and proximate cause; (2) the admission of expert veterinarian testimony was inappropriate; and (3) the trial court erred in excluding photographs and videos of Amor. We are not persuaded that these arguments, either singularly or in combination, mandates reversal and a new trial. We discuss each of them in turn. Before doing so, we recite some overarching principles concerning the limited scope of our review and the stringent requirements for granting a new trial.

## A.

Jury trials are the bedrock of our system of civil justice, and the jury's fact-finding function deserves a high degree of respect and judicial deference. See Caldewell v. Haines, 136 N.J. 422, 432 (1994). Typically, a narrow scope of review applies to civil jury verdicts. Jacobs v. Jersey Cent. Power & Light Co., 452 N.J. Super. 494, 502 (App. Div. 2017). Jury verdicts are "entitled to considerable deference and 'should not be overthrown except upon the basis of a carefully reasoned and factually supported and articulated determination, after canvassing the record and weighing the evidence, that the continued viability of

7

the judgment would constitute a manifest denial of justice.'" Risko v. Thompson Muller Auto. Grp., Inc., 206 N.J. 506, 521 (2011) (quoting Baxter v. Fairmont Food Co., 74 N.J. 588, 597-98 (1977)). See also Boryszewski v. Burke, 380 N.J. Super. 361, 391, (App. Div. 2005) (citations omitted), certif. denied, 186 N.J. 242, 8 (2006). In assessing the strength of the proofs, a jury verdict is "impregnable unless so distorted and wrong, in the objective and articulated view of a judge, as to manifest with utmost certainty a plain miscarriage of justice." Doe v. Arts, 360 N.J. Super. 492, 502-03, (App. Div. 2003) (quoting Carrino v. Novotny, 78 N.J. 355, 360 (1979)); see R. 4:49-1.

Negligent infliction of emotional distress "can be understood as negligent conduct that is the proximate cause of emotional distress in a person to whom the actor owes a legal duty to exercise reasonable care." Decker v. Princeton Packet, Inc., 116 N.J. 418, 429 (1989). The basic elements of an action of negligent infliction of emotional distress are: "(a) defendant owed a duty of reasonable care to plaintiff; (b) defendant breached that duty; (c) plaintiff suffered severe emotional distress; and (d) defendant's breach of duty was the proximate cause of the injury." Dello Russo v. Nagel, 358 N.J. Super. 254, 269 (App. Div. 2003) (citing Decker, 116 N.J. at 429).

B.

Applying these principles, we begin with plaintiff's claim, raised for the first time on appeal, that the court committed reversible error because the jury charge and jury verdict sheet tainted the jury's consideration of the issues of negligence and proximate cause. Specifically, plaintiff argues the court improperly combined duty, breach, and proximate cause in one question and that instruction and verdict sheet was improper. We disagree.

We review a "trial court's instruction on the law de novo." Palmer v. Flagship Resort Dev. Corp., 481 N.J. Super. 465, 479 (App. Div. 2025) (quoting Sackman Enters., Inc. v. Mayor & Counsel of Belmar, 478 N.J. Super. 68, 75 (App. Div. 2024)). "[I]n construing a jury charge, a court must examine the charge as a whole, rather than focus on individual errors in isolation." Viscik v. Fowler Equip. Co., 173 N.J. 1, 18 (2002) (citing Ryder v. Westinghouse Elec. Corp., 128 F.3d 128, 137 (3d Cir. 1997)). "The test to be applied . . . is whether the charge as a whole is misleading, or sets forth accurately and fairly the controlling principles of law." State v. Jackmon, 305 N.J. Super. 274, 299 (App. Div. 1997) (quoting State v. Sette, 259 N.J. Super. 156, 190-91 (App. Div. 1992)).

A-2580-23

Although our review of the jury charge is de novo, where a party does not object to a jury instruction, "there is a presumption that the charge was not error and was unlikely to prejudice the [party's] case." State v. Montalvo, 229 N.J. 300, 320 (2017) (quoting State v. Singleton, 211 N.J. 157, 182 (2012)). If the appealing party did not object to the jury instruction, the review required is by the plain error standard. Willner v. Vertical Reality, Inc., 235 N.J. 65, 80 (2018); State v. Wakefield, 190 N.J. 397, 473 (2007). The plain error standard means that "[a]ny error or omission shall be disregarded by the appellate court unless it is of such a nature as to have been clearly capable of producing an unjust result." R. 2:10-2.

Plaintiff did not object to the trial court's verdict sheets as presented. The first question on the jury verdict sheet read, "[W]as the defendant negligent, and was that negligen[ce] a proximate cause of harm?" Defendants, not plaintiff, objected to the language, seeking for it to be broken down to separate the questions and arguing that, as written, it presumed defendants were negligent. In response to defendants' objection, the trial court reasoned, "So duty, breach, causation[,] all of those things are in the charge itself, but I don't think it's necessary. Because to find they were negligent you have to find there was duty, you have to find there was a breach and then you have this question of

causation." When asked his position, plaintiff's then-counsel stated, "I agree with [the] Court." In essence, plaintiff deferred to the trial court's discretion for choosing the jury instruction language. After closing arguments, prior to deliberations, the trial court instructed the jury:

> If you find that [RBVH] was negligent, you must find that the hospital's negligence was the proximate cause of the injury before you can find that [RBVH] was responsible for Mario Quesada's claimed injury. If is the duty of — it is the duty of Mario Quesada to establish by a preponderance of the evidence that the negligence of [RBVH]was a proximate cause of the injury alleged to have resulted from [RBVH]'s negligence.

There was no objection to this charge by defendant. Therefore, this matter is reviewed for plain error.

The jury instructions utilized in this case were not capable of producing an unjust result. Plaintiff's concern is that the compound question to the jury left open-ended whether the jury found defendants negligent but not a proximate cause of plaintiff's harm, or whether they did not find defendants negligent at all. However, any step of the way, if the jury responded "no" to duty, breach, or causation, the outcome remains the same. See Russo, 358 N.J. Super. at 269.

A-2580-23

Plaintiff also argues that the jury instruction erroneously required the jurors to consider whether defendants' negligence was "the" proximate cause, as opposed to "a" proximate cause, of plaintiff's injury. We are not convinced.

The trial court's explanation of proximate cause very clearly represented the notion to the jury that it only needed to find that defendants' negligence was a proximate cause, not the sole cause of plaintiff's injury. While giving the jury instructions, in addition to the instruction above, the court also provided further explanation to the jury, instructing them that they had to determine whether defendants' "negligence was a substantial factor that singly or in combination with other causes" injured plaintiff. Furthermore, when the trial court read the jury verdict sheet to the jury, all phrases stated "a proximate cause."

When evaluating the jury instruction as a whole, there is no question that the correct legal standard was conveyed to the jury. See Viscik, 173 N.J. at 18. The instructions defined negligence and proximate cause, making it clear that proximate cause was not required to be one singular cause. The jury instructions correctly reflected that in the verdict sheet, and that even if duty, breach, and proximate cause had been separate questions, the outcome would have been the same.

A-2580-23

C.

Plaintiff next contends that a new trial is warranted because the admission of expert testimony confused the jury, was unnecessary, and inappropriate. He argues that whether defendants were negligent was within the common knowledge of a lay jury and, therefore, it was improper to permit veterinary experts to testify. Plaintiff's arguments are unavailing.

"In general, the trial court's decision to admit expert testimony is entitled to deference and reviewed for an abuse of discretion." Biunno, Weissbard & Zegas, Current N.J. Rules of Evidence, cmt. 1.2.5 on N.J.R.E. 702 (2025-2026); see State v. Kuropchak, 221 N.J. 368, 385 (2015). There is an abuse of discretion when a finding is "'made without a rational explanation, inexplicably departed from established policies, or rested on an impermissible basis.'" Iliadis v. Wal-Mart Stores, Inc., 191 N.J. 88, 123 (2007) (quoting Flagg v. Essex Cnty. Prosecutor, 171 N.J. 561, 571 (2002)).

N.J.R.E. 702 provides that "[i]f scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or otherwise." Ibid. For expert testimony to be admissible,

13

(1) the intended testimony must concern a subject matter that is beyond the ken of the average juror; (2) the field testified to must be at a state of the art such that an expert's testimony could be sufficiently reliable; and (3) the witness must have sufficient expertise to offer the intended testimony.

[Landrigan v. Celotex Corp., 127 N.J. 404, 413 (1992) (citing State v. Kelly, 97 N.J. 178, 208 (1984)).]

"In most negligence cases, the plaintiff is not required to establish the applicable standard of care." Davis v. Brickman Landscaping, Ltd., 219 N.J. 395, 406 (2014) (citing Sanzari v. Rosenfeld, 34 N.J. 128, 134 (1961)). Those cases ordinarily involve facts where "a layperson's common knowledge is sufficient to permit a jury to find that the duty of care has been breached without the aid of an expert's opinion." Giantonnio v. Taccard, 291 N.J. Super. 31, 43 (App. Div. 1996). In those cases, "[t]he applicable standard of conduct is then supplied by the jury[,] which is competent to determine what precautions a reasonably prudent man [or woman] in the position of the defendant would have taken." Sanzari, 34 N.J. at 134. However, in some cases, "the jury is not competent to supply the standard by which to measure the defendant's conduct." Id. at 134-35. Generally, an appellate court "will not set aside civil verdicts on this basis unless the court has abused its discretion, including with respect to

14

issues of the admissibility of expert opinion." Jacobs, 452 N.J. Super. at 502 (citing Hisenaj v. Kuehner, 194 N.J. 6, 16 (2008)).

To determine if expert testimony is necessary, the court properly considers "whether the matter to be dealt with is so esoteric that jurors of common judgment and experience cannot form a valid judgment as to whether the conduct of the [defendant] was reasonable." Butler v. Acme Mkts., Inc., 89 N.J. 270, 283 (1982). In its decision in Butler, our Court considered expert testimony to be "an aid to a jury and its use is encouraged in future cases. But its absence is not fatal." Ibid. There, the Court determined that "[t]he jury's finding on the reasonableness of defendant's behavior was one where 'fair minded men may honestly differ as to the conclusion drawn from disputed facts'" and therefore, expert testimony would be helpful to the jury. Ibid.

Plaintiff provides no support for his argument that the expert testimony confused the jury. The conduct and communication regarding detailing rabies testing to pet owners was called into question by plaintiff. Moreover, "[t]he opinion of witnesses, possessing peculiar skill, is admissible whenever the subject matter of inquiry is such, that inexperienced persons are unlikely to prove capable of forming a correct judgment upon it, without such assistance." Cook v. State, 24 N.J.L. 843, 852 (E. & A. 1855). At issue here was whether

A-2580-23

Dr. Brethel was negligent in telling plaintiff that Amor required a brain tissue sample for rabies testing when the process involved removing Amor's head and sending it to the DOH. Dr. Brethel testified he softened his language when describing this process because plaintiff was "distraught" and "still crying and wailing, and very, very emotional."

Ultimately, both sides called experts to testify to the standard of care in advising a pet owner of what a rabies test entailed. Without having the benefit of veterinarians providing their opinions, the jury would have nothing to compare Dr. Brethel's practice to, which could have led to confusion as to what was a common and accepted practice. Whether Dr. Brethel was correct in mitigating his language rather than telling a distraught individual that the individual's beloved pet required decapitation for rabies testing was "beyond the ken of the average layman." Biunno et al., cmt. 1.2.5 on N.J.R.E. 702.

The use of expert testimony here gave two independent opinions as to how veterinarians should tell a pet owner that their beloved animal required decapitation for rabies testing. Defendant's expert opined Dr. Brethel's softened language was appropriate. In contrast, plaintiff's expert opined that the owner needed all the facts regardless of how upset the owner presented. Neither opinion confused the jury. The motion judge did not abuse its discretion when

A-2580-23

it determined that experts could testify to help a jury understand the general practice and lack of strict standard for addressing the situation with a pet owner.

D.

We are also convinced the court did not err in excluding photographs and a video of Amor. The "admission of photographs having some probative value, even where cumulative and somewhat inflammatory, rests within the discretion of the trial judge." State v. Moore, 122 N.J. 420, 466-67 (1991) (quoting State v. Belton, 60 N.J. 103, 109 (1972)). "On appellate review, the decision of the trial court must stand unless it can be shown that the trial court palpably abused its discretion, that is, that its finding was so wide of the mark that a manifest denial of justice resulted." State v. Carter, 91 N.J. 86, 106 (1982).

A photograph must be relevant, meaning it must "hav[e] a tendency in reason to prove or disprove any fact of consequence to the determination of the action." N.J.R.E. 401. If it is relevant, it "may be excluded if its probative value is substantially outweighed by the risk of: (a) [u]ndue prejudice, confusion of issues, or misleading the jury; or (b) [u]ndue delay, waste of time, or needless presentation of cumulative evidence." N.J.R.E. 403.

Plaintiff submitted forty-five photographs with the intention of proffering them to show plaintiff happy, smiling, and relaxed. In reviewing the

A-2580-23

photographs, the court confirmed that some photographs had not been provided to the defense. The court then ruled that anything that hadn't been turned over in discovery would not be allowed.

The court then asked for plaintiff to choose two or three photographs to focus on during the argument. Plaintiff chose three photographs. The first one showed there was another cat in the home at some point in time during Amor's time in the home. Plaintiff argued that photograph proved he had another cat and therefore could not be painted as being "too overly attached to one cat." The second photo depicted plaintiff smiling, which plaintiff argued "establishes that prior to this incident he was — to the extent that the photo can show — not necessarily suffering from a mental health disorder that causes him to be the way he is now, not necessarily, constantly morose, panicky, angry." The court barred the second photograph, reasoning, "I don't find that that establishes what you're saying it establishes." As to the third photograph, which depicted plaintiff's mother and Amor, plaintiff put forth the same argument. In denying the use of that photograph, the court reasoned, "Again I don't find — without another purpose for them being offered one photograph of him smiling doesn't negate what the expert is saying. Testimony can be established through him and/or his father as to his condition prior to this incident happening".

18

In addressing the videos, plaintiff conceded that, despite submitting five videos for use at trial, he only intended to introduce one of them. Plaintiff argued that the video, not submitted on appeal, showed plaintiff before the incident, playing with his mother and his cat, acting normally. In denying the introduction of the video, the court found that "[i]t's twenty-one seconds. You . . . .can't even see your client in the video. I don't see how that helps establish better than testimony would how he was prior to this incident. So[,] I just don't see that that is relevant and should be admitted either."

Plaintiff's contention was that the photographs would show plaintiff as a "fully functional person" prior to the incident. The photographs in question depicted snapshots of plaintiff, Amor, and plaintiff's parents. "Day in the life" tapes may assist jurors in determining "the impact of the injuries upon the subject's day-to-day activities." Schiavo v. Owens-Corning Fiberglas Corp., 282 N.J. Super. 362, 368 (App. Div. 1995). However, those tapes are typically only admitted after "the trial judge has examined the content to determine whether it is relevant and probative and is an accurate representation." Ibid.

The video plaintiff submitted to the court did not depict plaintiff. It could not be considered a "day in the life" presentation to present the impact of plaintiff's injuries on his day-to-day activities. Furthermore, the photographs

A-2580-23

plaintiff sought to admit did not establish that, prior to the events in question, plaintiff was not suffering from a mental health disorder. Plaintiff submitted forty photographs; however, only six depict plaintiff. The photographs would only be cumulative evidence because both plaintiff and his father testified as to the differences between how plaintiff was before the event and after. Velazquez v. Jiminez, 336 N.J. Super. 10, 43 (App. Div. 2000) (finding that the information depicted in video tapes sought to be presented at trial was cumulative in view of the extensive testimony provided by the witnesses, where the plaintiff testified, her husband testified, and nurses testified at length). The photographs and videos did not establish any fact of consequence as it relates to plaintiff's negligent infliction of emotional distress claim. As such, the court did not abuse its discretion in barring the photographs and video.

To the extent we have not specifically addressed any other contentions raised by plaintiff, they lack sufficient merit to warrant discussion in this opinion. R. 2:11-3(e)(1)(B) and (E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Harley

Clerk of the Appellate Division

20

A-2580-23